(48 Misc. Rep. 242)

PEOPLE v. SUMMERFIELD et al.

(Supreme Court, Criminal Term, New York County. September, 1905.)

1. CONSPIRACY—INDICTMENT—SUFFICIENCY.

An indictment for conspiracy in New York is good which alleges that defendants corruptly agreed together in the state to sell corporate stock to a resident of Paris for more than it was worth by false representations, and that after such agreement one of them in New York sent

cablegrams to the purchaser in Paris containing such representations, though when such messages were sent some of the defendants were not in the state of New York.

2. CRIMINAL LAW—CONSPIRACY—VENUE OF PROSECUTION.

An indictment for conspiracy may be found in any county where an overt act was committed by any one of the conspirators, though the crime, which is the object of the conspiracy, was committed elsewhere.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 222.]

Lawrence Summerfield and others were indicted for conspiracy. Demurrer to indictment disallowed.

Wm. Travers Jerome, Dist. Atty., for the People.
Black, Olcott, Grüber & Bonynge, for defendant Murray.

DAVY, J.   This is a demurrer to the indictment interposed by the defendant Murray, and the important question is that of jurisdiction. The indictment charges a conspiracy on the part of the defendants made in the county of New York.   It alleges in substance that the defendants for the purpose of fraudulently dealing in stocks of a certain corporation called the "Horseshoe Copper Mining Company," and of cheating and defrauding the persons to whom they should sell or deliver any shares of such stock, did on the 1st day of May, 1902, at the borough of Manhattan, in the county of New York, feloniously conspire, combine, confederate, and agree together by false pretenses to cheat and defraud one Charles P. Buchanan, who resided in Paris, in the republic of France; that thereafter two of the defendants in pursuance of said conspiracy and acting thereon did go from the borough and county aforesaid to the city of Paris, and there on the 20th day of May, 1902, with intent to cheat and defraud said Buchanan of his property, did feloniously and fraudulently pretend and represent to the said Buchanan that a certain corporation called the "Horseshoe Mining Company" had a capital stock of 100,000 shares of the par value of $10 each then accrued; that the mining lands of said company were located in the territory of Arizona in the United States of America, which lands exceeded in value the amount of the corporation's capital stock; that the defendant Weller in pursuance and in furtherance of said conspiracy, and acting in concert with his co-confederates, did write and deliver for transmission to the said Buchanan divers cablegrams and messages and cause the same to be transmitted to him in the city of Paris, which cablegrams and messages fraudulently and falsely represented to the said Buchanan that Ignatius L. Qualey was then desirous of purchasing the said stock for the sum of $15 a share, and that he was then able, willing, and anxious to pay the said sum therefor, and the said Buchanan, then believing the said false and fraudulent representations, gave an order for the payment of 200,000 francs of the money of the said republic of France, and of the value of $40,000 in the money of the United States of America, to one of the defendants for said stock, whereas, in fact, the mining lands and property in the territory of Arizona were not then worth $10,000, and the certificate of 8,000 shares of said capital stock was wholly worthless and of no value whatever, and that the said Qualey was not then desirous of purchasing the said stock for

the sum of $15 a share, or for any sum whatever, and was not then able, willing, or anxious to pay the said sum or any sum therefor, and would not pay the said Buchanan the said sum of $15 a share for the stock, or any sum whatever in cash upon the receipt of said stock. The defendant Murray is charged with having been present in the county of New York at the time of the making of the conspiracy, but was not present when the false pretenses were made by his co-conspirator Weller in sending the cablegrams to Buchanan.

It is urged by the learned counsel for the defendant that, the conspiracy having been committed in New York, the offense is merged in the completed crime of grand larceny which was committed in Paris, and therefore the defendant is not liable on this indictment for the crime of conspiracy committed in the county of New York. The indictment must show jurisdiction in the grand jury by which it is found, and the jurisdiction of the trial court to hear and determine it. The question is whether the indictment in this case shows those facts. It must be kept in mind that the indictment is for conspiracy. We must, therefore, be guided by the law pertaining to that crime. An indictment for conspiracy may be found in any county in which it can be proved that an overt act was done by any of the conspirators in furtherance of their common design. Archb. Cr. Pr. & Pl. § 6; People v. Peckens, 153 N. Y. 576, 47 N. E. 883; Code Cr. Proc. § 134.

The rule is clearly stated in the Cyclopedia of Law & Procedure as to the jurisdiction of the court in cases of conspiracy (8 Cyc. 687) that:

"The venue in an indictment for conspiracy may be laid in the county in which the agreement was entered into, or in any county in which any overt act was done by any of the conspirators in furtherance of the common design. If the conspiracy is entered into within the jurisdiction of the court, the parties thereto are triable in that jurisdiction, notwithstanding the offense was to be committed without the jurisdiction; and, if a conspiracy is formed without the jurisdiction, an overt act committed by one of the conspirators within the jurisdiction is evidence of the crime within the jurisdiction where the overt act is committed."

After the conspiracy and combination are established, the overt acts of any of the conspirators for the purpose of accomplishing their object may be shown as against all of the parties to the conspiracy and they are all liable for such acts. Archb. Cr. Pr. & Pl. 676. Under section 29 of the Penal Code the acts and declarations of each of the conspirators are binding upon and are to be regarded as the acts done by the other co-conspirators. Section 134 of the Code of Criminal Procedure provides that:

"When a crime is committed, partly in one county and partly in another, or the acts or effects thereof, constituting or requisite to the consummation of the offense, occur in two or more counties, the jurisdiction is in either county."

The learned counsel for the defendant contends that this section has no application to crimes committed partly in one state and partly in another, and that this case can be distinguished from People v. Peckens, supra, relied upon by the learned district attorney, for the reason that the government of one country has neither interest nor power to enforce its will within the limits of another country or outside of its own territorial bounds. The people of the state of New York in this case are not attempting to enforce their will within the

limits of another country or outside of their own territorial bounds. The crime of conspiracy and certain overt acts were committed in the county of New York and this court has jurisdiction in that county to try the conspirators for the crime committed here. At common law the crime of conspiracy was complete when a corrupt agreement was made, although not followed by any overt act and no step had been taken in furtherance of the object of the conspiracy. The statute in this state has modified the common law in this respect by requiring that to constitute the crime of conspiracy there must be both a corrupt agreement and an overt act to effect the object of the agreement, except where the conspiracy is to commit certain felonies specified in section 171 of the Penal Code.

The allegations of the indictment plainly show that the defendants entered into a conspiracy in the county of New York to defraud Buchanan, and that the defendant Weller, in carrying out the corrupt agreement, made false and fraudulent representations in his cablegrams to Buchanan, which was clearly an overt act committed in the county of New York and done to effect the object of the conspiracy. The requirements of the statute were accomplished when the defendant Weller acted upon the unlawful agreement by sending the cablegrams to Buchanan. These false and fraudulent representations made by Weller were in the eyes of the law made by the defendant Murray, although he was not personally present. When it is alleged in the indictment that certain persons have conspired together to commit an offense and have committed certain overt acts, the illegal acts and declarations of each of the conspirators are binding upon and are to be regarded as the acts of the others. People v. McKane, 143 N. Y. 455, 38 N. E. 950.

In People v. Flack, 125 N. Y. 332, 26 N. E. 269, 11 L. R. A. 807, Judge Andrews, in speaking for the court, said:

"The gist of the crime of conspiracy consists in a corrupt agreement between two or more individuals to do an unlawful act, unlawful either as a means or as an end. Bishop, Cr. Law, § 171. The agreement may be established by direct proof or by inference, as a deduction from conduct which discloses a common design on the part of persons charged to act together for the accomplishment of the unlawful purpose."

It is expressly provided by statute that a person who advises or procures the commission of a crime may be indicted and convicted thereof, although he was absent when it was committed. Pen. Code, § 29; People v. Bliven, 112 N. Y. 79, 19 N. E. 638, 8 Am. St. Rep. 701. It was held in Commonwealth v. Corlies, 8 Phil. 450, that if a conspiracy be once established, although out of the jurisdiction of the court, an overt act committed by one of the conspirators within the jurisdiction of the court, in the pursuit of the common object of said conspiracy, is the act of each conspirator. The overt act is a renewal of the original conspiracy by all of the conspirators, wherever committed. It is evidence of the crime within the jurisdiction where the overt act is committed.

It is stated in the American & English Encyclopedia of Law (volume 28 [1st Ed.] 236) that:

"Ordinarily, when an offense is divisible in sections—one, of preparation, in one place. and another, of execution, in another place—the tribunals of either place have jurisdiction of the entire offense."

It was held in Thompson v. State, 106 Ala. 67, 17 South. 512, that, if a conspiracy was entered into in that state and one or more overt acts perpetrated there, the courts of that state have jurisdiction, although the act which was the subject of the conspiracy was performed in another state. The same rule prevails in Texas. Rogers v. State, 10 Tex. App. 655, 38 Am. Rep. 654. There are cases holding that, if the conspiracy is entered into within the jurisdiction of the court, the parties thereto are triable in that jurisdiction, notwithstanding the offense was to be committed without the jurisdiction (Com. v. Corlies, 8 Phil. 450), and if a conspiracy is formed without the jurisdiction an overt act committed by one of the conspirators within the jurisdiction is evidence of the crime within the jurisdiction where the overt act is committed. Commonwealth v. Lack, 1 Brewst. (Pa.) 511; Reg. v. Connoly, 25 Ont. 151.

In the celebrated case of People v. Mather, 4 Wend. 261, 21 Am. Dec. 122, in which the defendant was indicted for a conspiracy to abduct Morgan, a case which made a great sensation at the time, it was held that:

"If conspirators enter into the illegal agreement in one county, the crime is perpetrated there, and they may be immediately prosecuted; but the proceedings against them must be in that county. If they go into another county to execute their plans of mischief, and there commit an overt act, they may be punished in the latter county without any evidence of an express renewal of their agreement. The law considers that, wherever they act, there they renew, or, perhaps to speak more properly, they continue, their agreement, and this agreement is renewed or continued as to all whenever any one of them does an act in furtherance of their common design. In this respect, conspiracy resembles treason in England, when directed against the life of the King. The crime consists in imagining the death of the King. In contemplation of law, the crime is committed wherever the traitor is, and furnishes proof of his wicked intention by the exhibition of any overt act."

I am of the opinion that the facts alleged in the indictment constitute a crime committed within the county of New York, and that the grand jury by which it was found had legal authority to inquire into the crime and to find the indictment.

The demurrer, therefore, is disallowed, with leave, however, to the defendant to plead to the indictment.

Demurrer disallowed, with leave to defendant to plead to indictment.