266 F.Supp. 318 (1967)
UNITED STATES of America
v.
Jay Aubrey ELLIOTT and Rolf Dunbier, Defendants.
No. 66 Cr. 944.
United States District Court S. D. New York.
March 10, 1967.
*319 *320 *321 Robert M. Morgenthau, U. S. Atty., New York City, for the United States; Frank M. Tuerkheimer, Asst. U. S. Atty., of counsel.
Kunstler Kunstler & Kinoy, New York City, for defendant Jay Aubrey Elliott; William M. Kunstler, New York City, of counsel.

OPINION
COOPER, District Judge.
Defendants are under indictment for allegedly violating 18 U.S.C. § 956, which provides:
(a) If two or more persons within the jurisdiction of the United States conspire to injure or destroy specific property situated within a foreign country and belonging to a foreign government or to any political subdivision thereof with which the United States is at peace, or any railroad, canal, bridge, or other public utility so situated, and if one or more such persons commits an act within the jurisdiction of the United States to effect the object of the conspiracy, each of the parties to the conspiracy shall be fined not more than $5,000 or imprisoned not more than three years, or both.
(b) Any indictment or information under this section shall describe the specific property which it was the object of the conspiracy to injure or destroy.
Defendants are charged with conspiring in the United States to destroy a railroad bridge in the Republic of Zambia and committing several acts in furtherance of that conspiracy within the United States; that the destruction of this bridge would effectively halt the supply of Zambian copper on the world market; and that defendants expected to profit economically from the ensuing copper shortage.
Defendant Elliott now moves to dismiss the indictment. He asserts various constitutional defects in the statute under which, and the procedure by which, he was indicted. We deny the motion in all respects.

Void-for-Vagueness
Defendant contends that the statute is void for vagueness. He takes exception to the words "* * * a foreign country * * * with which the United States is at peace * * *" (emphasis added), arguing that these words lack the required specificity. His argument in essence is that while these words may have had meaning in 1917 when the statute was passed, the more formal, and presumably, orderly conduct of a by-gone era of international relations has been replaced by an age of such turbulence and confusion that today it is impossible to determine when and with which foreign countries the United States is "at peace." He raises the examples of recent crises involving North Korea, Communist China, the Dominican Republic, Cuba, Haiti, Guatemala, North Vietnam and the Soviet Union to illustrate the difficulty faced by the citizen in ascertaining the legality of his course of action.
Elliott is under indictment for conspiracy to destroy property in the Republic of Zambia. It is highly significant that he makes no allegation that our relations with that country have reached such a point of hostility that it is difficult to determine whether we are "at peace" with Zambia.
Accordingly, defendant cannot demonstrate the purported vagueness of the statute by "* * * suggesting hypothetical cases taken from the peripheral areas of the statute's scope * * *. He must show that, as applied to his own case, the statute was so vague and uncertain that he was not presented with an `ascertainable standard of guilt.' Winters v. People of State of New York, 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840 (1948)." United States v. Irwin, 354 F.2d 192, 196 (2d Cir. 1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 *322 L.Ed.2d 308 (1966). The established rule is that "The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined." United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960); Jordan v. De George, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1961); United States v. National Dairy Products Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
Defendant relies upon a line of cases which have allowed the raising of hypotheticals to test the validity of a statute.[1] But such cases in which the defendant was so accorded standing involved restrictions placed on First Amendment freedoms. This relaxation of the usual standing requirement is an exception to the rule of United States v. Raines, supra, and is allowed only "* * because of the `* * * danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.'" Dombrowski v. Pfister, 380 U.S. 479, 486-487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965); United States v. National Dairy Products Corp., supra. There is, of course, no First Amendment issue here.
We cannot regard this statute as being unconstitutionally vague. A statute does not have to meet impossible standards of specificity. Jordan v. De George, supra 341 U.S. at 231, 71 S.Ct. 703. It must just not forbid conduct "* * * in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." Lanzetta v. State of New Jersey, 306 U.S. 451, 453, 59 S. Ct. 618, 619, 83 L.Ed. 888 (1959); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).
The words "at peace" and the statute as a whole conveys "* * * definite warning as to the proscribed conduct when measured by common understanding and practices." Jordan v. De George, supra, 341 U.S. at 231-232. 71 S.Ct. at 708. The Courts have previously met the challenge of determining when the United States was at peace. See Lee v. Madigan, 358 U.S. 228, 79 S.Ct. 276, 3 L.Ed.2d 260 (1958). Cf. Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 1881 (1948); United States v. Sobell, 314 F.2d 314 (2d Cir. 1963). Determining whether we are at peace with Zambia poses a problem no more difficult for a court or a citizen than that posed in understanding any statute dealing with complex behavior and concepts. E. g., United States v. Re, 336 F.2d 306 (2d Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed.2d 177 (1964) where our Court of Appeals rejected the contention that "control" as used in the securities laws was unconstitutionally vague.
The one salient fact that stands out is that the acts charged to this defendant are unequivocally within the prohibition of the statute. See Williams v. United States, 341 U.S. 97, 101, 71 S.Ct. 576, 95 L.Ed. 774 (1951). Defendant submits not a thread of evidence to lead us to any other conclusion but that a man of ordinary intelligence would know whether or not we are "at peace" with the Republic of Zambia. Whatever difficulty the statute poses as to others (and we see none), it is clear as to Elliott.

Due-Process
Defendant further contends that the statute violates due process in that it attaches criminal liability to a conspiracy in a situation wherein the government is without power to punish the substantive crime. Concededly, the territorial limitations inherent in common law concepts of jurisdiction raises some question as to the power of the United States to *323 punish acts committed in a foreign state. See Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892); American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909). But see United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922); Kawakita v. United States, 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249 (1952); George Extraterritorial Application of Penal Legislation, 64 Mich.L.Rev. 609 (1966). However, even if we agree that the substantive offense destruction of a bridge in Zambia could not be punished by the United States, we find that the formation in the United States of a conspiracy to do so can be firmly prohibited nevertheless.
The crime of conspiracy is separate and distinct from the substantive offense. The conspiracy is a separate crime completed when the agreement is made. See e. g., Williams, Criminal Law: The General Part 663 (1953); Martin v. United States, 100 F.2d 490 (10th Cir. 1938), cert. denied, 306 U.S. 649, 59 S.Ct. 590, 83 L.Ed. 1048 (1939). Accordingly, a state of the United States has the power to prosecute conspirators for an agreement made within its borders even though the substantive offense is without its jurisdiction. People v. Summerfield, 48 Misc. 242, 96 N.Y.S. 502 (Sup.Ct.1905); Thompson v. State, 106 Ala. 67, 17 So. 512 (1895); State v. Loser, 132 Iowa 419, 104 N.W. 337 (1905); Note, DevelopmentsCriminal Conspiracy, 72 Harv.L.Rev. 922, 978 (1959). Cf. Dealy v. United States, 152 U.S. 539, 14 S.Ct. 680, 38 L.Ed. 545 (1894).
The modern jurisdictional concept of weighing the relevant interests concerned (See International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)) further demonstrates the clear propriety that the United States attach criminal liability to conspiracies such as are here alleged.
It is established beyond cavil that the Constitution vests exclusive control of the nation's foreign policy and all intercourse with foreign states in the Federal Government. United States v. Arjona, 120 U.S. 479, 483, 7 S.Ct. 628, 30 L.Ed. 728 (1887). The Federal Government's power over foreign affairs "* * * comprises not only authority to regulate relations with foreign countries, but also [power] to prohibit any disturbance or interference with external affairs." United States v. Peace Information Center, 97 F.Supp. 255, 260 (D.C.1951).
Defendant has requested this Court to take judicial notice of various crises and acts in furtherance of international relations. The Court cannot help being aware of the delicacy of American foreign relations particularly in such areas as Africa. The offense charged, if consummated, clearly would have disrupted the economy of a nation. It is inconceivable that such an act, conceived in America and perpetrated by Americans, would not have seriously affected American relations with Zambia. The prevention of the deed and the prosecution of the culprits (if only to show the complete lack of any official complicity) makes such proceedings imperative and is well within the legitimate interests of the United States government.[2]
We do not find defendant's reliance upon United States v. Laub, 385 U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (Jan. 10, 1967) to be appropriate. In that case the Supreme Court held that Section 215(b) of the Immigration Act (8 U.S.C. § 1185(b)) did not authorize area restrictions announced by the State Department; the Court held it was not a *324 crime to conspire to aid and arrange for others to violate these area restrictions.
There is nothing in Laub which contradicts the established common law concept that even if the objects are not themselves criminal, the conspiracy is punishable where the objectives present "* * * prejudice to the general welfare. * * *" Note, supra, 72 Harv. L.Rev. at 942 and cases cited therein.[3] The objective alleged here, malum in se in any sense of that term, if consummated would have escaped the criminal law of this nation. The conspiracy and its furtherance on American soil presents a danger most inimical to the public welfare and is consequently most properly made criminal.
We note further the concern of the Court in Laub for prior official actions and statements which it regarded as resulting in punishment for "* * * actions undertaken in good faith reliance upon authoritative assurance that punishment will not attach." 87 S.Ct. at 581. There is no allegation of any official complicity in defendant's act or any evidence supporting the conclusion that defendant had reason to believe he would not be punished.

Equal Protection
Defendant, contending that the statute is being selectively applied against him, urges this additional reason in support of his motion to dismiss the indictment. He points to the statute's apparent non-use since its inception despite what he considers to be its frequent violation, and cites recent events in North Korea, Cuba, the Dominican Republic and North Vietnam.
Defendant relies upon the doctrine of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), which established that discriminatory enforcement of an otherwise valid administrative regulation violates equal protection. The Court there stated:
Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. 118 U.S. at 373-374, 6 S.Ct. at 1073.
Certain types of selective enforcement of a penal statute may give rise to a violation of equal protection.[4]
We do not regard Elliott as having met even the threshold point of the Yick Wo doctrine  official discrimination "* * * between persons in similar circumstances, material to their rights * * *." Yick Wo v. Hopkins, supra, 118 U.S. at 374, 6 S.Ct. at 1073. He has not offered evidence even touching upon an example of any other person who conspired to destroy property in any nation with which the United States was clearly at peace and who was not prosecuted. Instead he has raised situations such as North Vietnam or the Bay of Pigs where government complicity would effectively bar any prosecution. See United States v. Laub, supra, 87 S.Ct. 574.
*325 Moreover, in the instances raised by defendant there is present a patriotic or political motivation which can be understood if not condoned. Defendant here is charged with an act motivated solely by an exclusively personal desire for financial gain; it is understandable that it does not inspire prosecutorial discretion.
Defendant, furthermore, has adduced no proof of an evil motive causing the statute to be discriminatorily applied. There is no denial of equal protection "* * * unless there is shown to be present in it an element of intentional or purposeful discrimination." Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944).
In Oyler v. Boles, supra, the defendant contended that his conviction under the West Virginia recidivist statute violated the equal protection clause in that many persons required to be sentenced as recidivists were not subjected to the harsher penalties. The Supreme Court rejected this argument.
* * * the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged. 368 U.S. at 456, 82 S.Ct. at 506.
Accordingly, the lack of any evidence of evil intent distinguishes what we have before us from cases where unconstitutional selective enforcement was found.[5] We regard this lack of an evil motive, based upon a constitutionally impermissible standard, as being particularly significant where, as here, the "right" defendant seeks to protect is neither constitutionally protected nor legal. We are not being asked to protect the right to vote (See Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed. 2d 110 (1960)) or the freedom of the press (See Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936)) from official harassment.
In short, defendant's argument is that others were not prosecuted. In a system of prosecutorial discretion (United States v. Dotterweich, 320 U.S. 277, 285, 64 S.Ct. 134, 88 L.Ed. 48 (1943)), this raises no constitutional question. United States v. Rickenbacher, 309 F.2d 462 (2d Cir. 1962), cert. denied, 371 U.S. 962, 83 S.Ct. 542, 9 L. Ed.2d 509 (1963). "Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection." Moss v. Hornig, 314 F.2d 89, 92 (2d Cir. 1963).

Desuetude
Defendant contends that the apparent absence of any prosecution under the statute since its promulgation in 1917 renders it void because of desuetude. We do not agree.
Desuetude is a civil law doctrine rendering a statute abrogated by reason of its long and continued non-use. It is not part of English jurisprudence, although it is recognized in the law of Scotland. Bonfield, The Abrogation of Penal Statutes by Nonenforcement, 41 Iowa L.Rev. 389, 395-409 (1964).
Its status in American law is unclear. One commentator has concluded that there are no means under American law by which a validly enacted statute can be rendered ineffective by non-use. 1 Sutherland, Statutory Construction § 2034 (Horach Ed. 1943). Recent commentators, however, have found some vitality to the doctrine. See Bickel, The Least Dangerous Branch 143-56 (1962); Bonfield, supra, 49 Iowa L.Rev. 389; Rodgers, Desuetude As A Defense, 52 Iowa L.Rev. 1 (1966). The Supreme Court's consideration of the problem has *326 not resolved the question. Compare District of Columbia v. John R. Thompson Co., Inc., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953) with Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).
We find little analytical aid in merely applying, or refusing to apply, the rubric of desuetude. The problem must be approached in terms of that fundamental fairness owed to the particular defendant that is the heart of due process. An analysis of the problems posed to this defendant by this allegedly desuetudinal statute demonstrates the statute's continued vitality.
Defendant's contentions to the contrary, we are not faced here with the enforcement of either a basically obsolete or an empty law whose function has long since passed. We are not here concerned with a law forbidding the sale of candy cigarettes, or prohibiting kite flying, or banning the exhibition of films depicting a felony. See the statutes collected in Bonfield, supra, 49 Iowa 389 n. 2. The function of the statute before us "* * * to punish acts of interference with the foreign relations * * of the United States" (40 Stat. 217 (1917))  is as vibrantly vital today as when it was passed. Indisputably, defendant is not being punished by the letter of a rule whose reason has long since passed.
In some situations a desuetudinal statute could prevent serious problems of fair notice. See Bonfield, supra, 49 Iowa L.Rev. at 417; Rodgers, supra, 52 Iowa L.Rev. at 19-20. However, this statute does not penalize conduct which, through a long period of non-enforcement, has acquired the status of customary usage, nor has opprobrium for the act been suddenly revived. Conspiring to destroy a bridge is not, and never has been, permitted by community mores. Defendant would have to know his act was wrong and if consummated a crime in Zambia. His surprise at finding the conspiracy an offense against the United States is naive in the extreme and clearly affords no defense.
A desuetudinal statute also contains the potential for abuse that rests in any over-broad administrative discretion; its selective enforcement raises equal protection problems analogous to the Yick Wo doctrine. See Bonfield, supra, 49 Iowa L.Rev. at 417; Rodgers, supra, 52 Iowa L.Rev. at 11-12. However, defendant, as we have already noted, has adduced not a scintilla of evidence even indicating that the government singled him out, by applying an unconstitutional standard, for punishment.
Defendant, in short, consequently must establish that mere non-use of a statute deprives it of life. In the absence of some specific objection (such as indicated above), we hold that non-use alone does not abrogate a statute.
Pertinent, too, is Waldron v. British Petroleum Co., 231 F.Supp. 72 (S.D.N.Y. 1964) wherein this Court held vital a previously unenforced section of the Logan Act (18 U.S.C. § 953) promulgated in 1799. Indeed, "The law hath not been dead, though it hath slept."[6]

The Composition of the Grand Jury
Defendant moves to dismiss the indictment, or in the alternative for a hearing, on the grounds that the grand jury did not represent a true cross-section of the community. He contends that Negroes, Puerto Ricans and members of racial, ethnic and socio-economic minorities are intentionally and systematically excluded.
The process by which jurors are selected for this district has been exhaustively scrutinized and approved in numerous recent cases.[7] Defendant's objections *327 to the selection process have been considered and rejected in these cases.
The principle emerging from our Circuit's consideration of the problem of juror selection is that when the selection process is inherently neutral and non-discriminatory the grand jury resulting is constitutionally valid. We do not regard Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966) as being to the contrary.
Defendant has charged that jurors are intentionally selected so as to exclude certain minority groups. But the documents and observations adduced by defendant do not even attempt to offer any significant proof of a discriminatory or evil intent. Until such an evidentiary burden is met, stare decisis controls, and we are bound by the numerous decisions upholding the propriety of the selection process.

Motion addressed to Grand Jury minutes, Bill of Particulars, Issue of Eavesdropping
Pursuant to Rule 6(e), F.R.Crim.P., defendant moves to inspect the grand jury minutes. Motion denied.
The traditional secrecy of grand jury proceedings is not to be disturbed except for a substantial reason. United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); United States v. Van Allen, 28 F.R.D. 329 (S.D.N.Y.1961). None is ascribed in this effort addressed to the dismissal of the superseding indictment because of "* * * matters occurring before the grand jury." Rule 6(e). We find no allegation of such impropriety as would warrant piercing the secrecy of the proceeding. See United States v. Gonzalez, 38 F.R.D. 326, 328 (S.D.N.Y. 1965).
The confusion cited by defendant as to which bridge was the objective of the conspiracy is irrelevant to the validity of the superseding indictment. The indictment specifies the property involved. Any confusion stemming from newspaper accounts or in a prior indictment now quashed does not affect it.
Defendant's contention that he needs the grand jury transcript in order to discover the names of government witnesses is a fishing expedition which we can not support. Cf. United States v. Van Allen, supra. The disclosure of government witnesses is not even permitted by way of a bill of particulars. See United States v. Kahaner, 203 F. Supp. 78 (S.D.N.Y.1962).
Pursuant to Rule 7(f), F.R. Crim.P., defendant moves for a bill of particulars.
Defendant's request for "* * * the specific facts and particular acts upon which it will seek to prove that defendant violated the count of the indictment * * *" is denied. We regard this request as going well beyond the established purposes of a bill of particulars. It seeks virtually a preview of the government's case before trial and, accordingly, it is denied. See United States v. Kahaner, supra; United States v. Kelley, 254 F.Supp. 9 (S.D.N.Y.1966).
Defendant's request that the government indicate "* * * whether any eavesdropping by wire interception, electronic or other mechanical device or human being was used by the Government in its pre-charge or pre-indictment investigation * * *" is granted.
The existence of sophisticated "bugging" devices is difficult to detect. It is their silent nature which leads us to believe that their use, if any, should be acknowledged by the government upon defendant's request. We regard this as being the only practical means of discerning whether any infringement of defendant's Constitutional rights occurred.
Accordingly, for the reasons stated herein, defendant's motions to dismiss the indictment or, in the alternative, for a hearing on the question of grand juror selection, and for discovery of the grand jury transcript are denied. The motion *328 for a bill of particulars is denied except as herein indicated.
This shall be considered an order; settlement thereof is unnecessary.
So ordered.
NOTES
[1] E. g., Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); Baggett v. Bullitt, 377 U.S. 360, 184 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).
[2] Cf. American Banana Co. v. United Fruit Co., supra, 213 U.S. at 356, 29 S.Ct. at 512 where the Court (per Holmes, J.) noted that in "* * * cases immediately affecting national interests * * * [nations may punish] acts done within another recognized jurisdiction * * *"; United States v. Dealy, supra, upholding the constitutionality of a statute making it a crime to counterfeit the money of a foreign nation.
[3] Cf. Dennis v. United States, 384 U.S. 855, 860-861, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); United States v. Vazquez, 319 F.2d 381 (3d Cir. 1963); United States v. Terranova, 7 F.Supp. 989 (N.D.Cal. 1934) allowing punishment under 18 U.S.C. § 371 for conspiracy to defraud the United States despite their being no criminal liability attached to the objective of the conspiracy.
[4] See Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Edelman v. People of State of California, 344 U.S. 357, 359, 73 S.Ct. 293, 97 L.Ed. 387 (1953) (dictum); Ah Sin v. Wittman, 198 U.S. 500, 506-507, 25 S.Ct. 756, 49 L.Ed. 1142 (1905) (dictum); People v. Walker, 14 N.Y.2d 901, 252 N.Y.S.2d 96, 200 N.E. 2d 779 (1964); People v. Harris, 182 Cal. App.2d Supp. 837, 5 Cal.Rptr. 852 (1960); Bargain City U. S. A., Inc. v. Dilworth, 29 U.S.L.Week 2002 (Pa.C.P. June 10, 1960) aff'd 407 Pa. 129, 179 A.2d 439 (1962); Comment, The Right to Nondiscriminatory Enforcement of State Penal Laws, 61 Colum.L.Rev. 1103 (1961).
[5] See People v. Harris, supra (statute enforced solely against negroes); Bargain City U. S. A., Inc. v. Dilworth, supra (statute enforced solely against large department stores.)
[6] Shakespeare, Measure for Measure, Act II, Scene ii, cited in Waldron v. British Petroleum Co., supra at 89 n. 30.
[7] United States v. Kelly, 349 F.2d 720 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); United States v. Bowe, 360 F.2d 1 (2d Cir. 1966); United States v. Agueci, 310 F.2d 817, 90 A.L.R.2d 478 (2d Cir. 1962), cert. denied, Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Greenberg, 200 F.Supp. 382 (S.D.N.Y.1961); United States v. Van Allen, 208 F.Supp. 331 (S.D. N.Y.1962).