UNITED STATES of America, Plaintiff,

v.

Ronnie S. JONES, Jr. a/k/a Robert L. Barber, Defendant.

No. 04–CR–203.

United States District Court, E.D. Wisconsin.

Nov. 12, 2004.

Gordon P. Giampietro, United States Department of Justice (ED–WI), Office of

the United States Attorney, Milwaukee, WI, for Plaintiff.

Brian P. Mullins, Federal Defender Services of Wisconsin, Milwaukee, WI, for Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INFORMATION

CALLAHAN, United States Magistrate Judge.

> Most gulls don't bother to learn more than the simplest facts of flight—how to get from shore to food and back again. For most gulls, it is not flying that matters, but eating. For this gull, though, it was not eating that mattered, but flight. More than anything else, Jonathan Livingston Seagull loved to fly.
> —Richard Bach, 'Jonathan Livingston Seagull'

### I. BACKGROUND

The defendant in this case, Ronnie S. Jones, Jr. a/k/a Robert L. Barber ("Jones"), has been charged in a one-count Information with a violation of 16 U.S.C. §§ 703 and 707(a). Specifically, the Information alleges that on or about July 29, 2004, in the State and Eastern District of Wisconsin Jones "without being permitted to do so, did unlawfully take migratory birds, to wit: 10 ring-billed gulls (*Larus delawarensis*) as defined in 50 C.F.R. § 10.3."[1] Jones has entered a not guilty plea to the Information.

Jones' trial is currently scheduled to commence on December 6, 2004. Whether the trial will proceed on that date is debatable because his counsel has requested, and the court has ordered, that Jones be examined to determine his mental competency to stand trial. In any event, on October 20, 2004, counsel for Jones filed a motion to dismiss the Information, incorporating therein a memorandum of law in support thereof. On October 29, 2004, the government filed its legal brief in opposition to the defendant's motion. The defendant has not filed any reply. Consequently, the defendant's motion to dismiss is now fully briefed and is ready for resolution. For the reasons which follow, the defendant's motion to dismiss will be denied.

### II. DISCUSSION

According to the defendant, the instant prosecution

> violates his due process right to be notified of the law regulating his conduct because the government has not charged a person criminally in this district with violating the Migratory Bird Treat[y] Act for at least five years. More specifically, there is no evidence that, nationwide, the government has charged anyone with violating the Migratory Bird Treaty Act by taking ring-billed gulls.

(Def.'s Mot. at 1.) While acknowledging that ignorance of the law is generally not a defense, *see United States v. Wilson*, 159 F.3d 280, 288–89 (7th Cir.1998), and *Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), the defendant argues that

> due process places some limits on this maxim of American law. *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). "Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assesses." *Id.*

---

1. The nature of the allegations shows clearly that Jones is no fond fan of Jonathan Livingston Seagull. Indeed, according to the government's brief, the charges in the Information stem from Jones' allegedly running down ten ring-billed seagulls with his car.

Intertwined with the due process concept of fair notice is the doctrine of statutory construction called desuetude, which allows courts to dismiss a charge brought under a statute that has been disused. *United States v. Elliott*, 266 F.Supp. 318, 325 (S.D.N.Y.1967). Although originally a civil law doctrine, courts have acknowledged that a desuetudinal statute could present "serious problems of fair notice" in a criminal case. *Id.* at 326. "As observed by one perceptive commentator: 'a penal enactment which is linguistically clear, but has been notoriously ignored by both its administrators and the community for an unduly extended period, imparts no more notice of its proscriptions that a statute which is phrased in vague terms.'" NORMAN J. SINGER, SUTHERLAND'S STATUTORY CONSTRUCTION § 34:6 at 44 (6th ed.2001) (quoting Bonfield, *The Abrogation of Penal Statutes by Nonenforcement*, 49 IOWA L. REV. 389, 416 (1964)). (Def.'s Mot. at 5–6.) In the end, Jones does not seek to have the court abrogate the entire Migratory Bird Treaty Act. Rather, Jones asks the court to find that a criminal prosecution under that act for killing ring-billed gulls violates his "right to due process because there is no evidence that the government has previously brought such a prosecution [and Jones thus] lacked notice that the conduct with which he is charged violated federal law." (Def.'s Mot. at 7.)

The defendant's argument self-admittedly depends for its viability on the dual factual propositions that (1) there have been no prosecutions nationally under the Migratory Bird Treaty Act for taking ring-billed gulls and (2) there have been no prosecutions in the last five years in this district for any violations of the Migratory Bird Treaty Act. Because neither factual proposition is correct, the defendant's argument must be rejected.

Dealing first with prosecutions in this district, the government presents in its response that, not including the instant case, there have been three prosecutions in this district under the Migratory Bird Treaty Act between 1997 and 2004. Those cases are *United States v. Bruss*, 97–CR–121 (E.D.Wis.1997), *United States v. Shepard*, 98–CR–201 (E.D.Wis.1998), and *United States v. Weyco Group, Inc.*, 99–CR–166 (E.D.Wis.1999). Indeed, the most recent of the three cases, *Weyco*, involved ring-billed gulls. *See* U.S. Fish & Wildlife Service, *Wisconsin Corporation Pays $30,000 for Violating Wildlife Laws* (Sept. 24, 1999) *at* http://news.fws.gov/NewsReleases/R3/F41A0ADC–C574–11D4–A17B009027B6B5D3.html.

Furthermore, in terms of national prosecutions, this court's own research has uncovered at least two prosecutions in which ring-billed gulls were among those birds upon which prosecution under the Migratory Bird Treaty Act was based. In *United States v. FMC Corp.*, 572 F.2d 902 (2nd Cir.1978), the defendant was convicted, after jury trial, of unlawfully by means of toxic and noxious waters, killing migratory birds, in violation of 16 U.S.C. § 703. The victim bird in Count 10 of the indictment in *FMC* was a ring-billed gull. *See FMC*, 572 F.2d at 903.

More recently, the August 11, 2004 edition of the Arizona Daily Star reported that, during that same week in the United States District Court for the District of Arizona, Phelps Dodge pleaded guilty to violating the Migratory Bird Treaty Act. Mitch Tobin, *Bird Deaths Cost PD Over $1M*, Arizona Daily Star (Aug. 11, 2004) *available at* http://dailystar.com/dailystar/relatedarticles/33709.php. The guilty plea stemmed from a number of migratory birds having died from drinking water contaminated by operation of the Phelps Dodge Morenci copper mine. Among the

migratory birds found dead at the mine and upon which prosecution was based was one ring-billed gull.

In any event, the Seventh Circuit of Appeals has noted that, if the defense of desuetude even exists, it is reserved for extreme cases. *See Cent. Bank of Mattoon v. United States Dep't. of Treasury,* 912 F.2d 897, 906 (7th Cir.1990). In this regard the court in *Central Bank* stated "that the sudden revival of a long forgotten law carrying harsh penalties (the theme of Shakespeare's *Measure for Measure,* where the law in question imposed the death penalty for fornication) might encounter a defense of desuetude." *Id.* at 906. In the face of the foregoing list of, by no means ancient, prosecutions under the Migratory Bird Treaty Act, Jones's effort to invoke the protections of the doctrine of desuetude must fail. Simply stated, his is not an "extreme" case of being prosecuted for some long forgotten law carrying harsh penalties.

Finally, in *United States v. Moon Lake Elec. Assoc., Inc.* 45 F.Supp.2d 1070 (D.Col.1999), the court had occasion to discuss the application of the desuetude doctrine in the context of a prosecution under, *inter alia,* the Migratory Bird Treaty Act. In rejecting its application to the case at hand, the court stated:

Considering the government's decision to prosecute oil companies, a pesticide manufacturer, and pesticide users for hazardous operation of oil sump pumps, wastewater ponds, and pesticide applicators, Moon Lake cannot argue credibly that the MBTA has been in disuse. Although none of the referenced prosecutions related to the operation of electrical power lines, the civil law doctrine of "desuetude," assuming its viability in American jurisprudence, requires a showing of "long and continued non-use" of a statute that is "basically obsolete." ... The doctrine of desuetude does not

require the government to prosecute every specific offense. Here, it is sufficient that the MBTA's purposes remain viable, the conventions with Canada, Japan, and Mexico continue as solemn obligations, and the government has recently instituted prosecutions under MBTA. *Moon Lake,* 45 F.Supp.2d at 1083. So too in the case at bar. Even assuming the doctrine of desuetude to be arguably viable, it is unavailable to Jones precisely because the government has undertaken numerous prosecutions for violations of the Migratory Bird Treaty Act. Even more to the point, the government has, as recently as 1999 in this very district, prosecuted a defendant for committing violations of the Migratory Bird Treaty Act with respect its treatment of ring-billed gulls.

In conclusion, and for all of the foregoing reasons, the defendant's motion to dismiss the Information will be denied.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to dismiss be and hereby is **DENIED**.