# AMERICAN BANANA COMPANY *v.* UNITED FRUIT COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 686. Argued April 12, 13, 1909.—Decided April 26, 1909.

While a country may treat some relations between its own citizens as governed by its own law in regions subject to no sovereign, like the high seas, or to no law recognized as adequate, the general rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where it is done.

Law is a statement of the circumstances in which the public force will be brought to bear upon men through the courts; but the word commonly is confined to such prophecies or threats when addressed to persons living within the power of the courts.

A statute will, as a general rule, be construed as intended to be confined in its operation and effect to the territorial limits within the jurisdiction of the lawmaker, and words of universal scope will be construed as meaning only those subject to the legislation.

The prohibitions of the Sherman Anti-Trust Law of July 2, 1890, c. 647, 26 Stat. 209, do not extend to acts done in foreign countries even though done by citizens of the United States and injuriously affecting other citizens of the United States.

Sovereignty means that the decree of the sovereign makes law; and foreign courts cannot condemn the influences persuading the sovereign to make the decree. *Rafael* v. *Verelst,* 2 Wm. Bl. 983, 1055, distinguished.

Acts of soldiers and officials of a foreign government must be taken to have been done by its order.

A conspiracy in this country to do acts in another jurisdiction does not draw to itself those acts and make them unlawful if they are permitted by the local law.

166 Fed. Rep. 261, affirmed.

THE facts are stated in the opinion.

*Mr. Everett P. Wheeler,* with whom *Mr. Horace E. Deming* was on the brief, for plaintiff in error:

The Circuit Court should have taken jurisdiction of this action. Section 7 of the Sherman Act expressly provides for the bringing of suits like the present one, "in any Circuit Court of the United States in the district in which the defendant resides or is found." See also § 2, Art. VI, Const. U. S. The suit at bar is a civil suit, arising under the laws of the United States and a treaty made under its authority. It is brought to recover for injuries done by defendant, and declared unlawful by the Sherman Act. The Circuit Court is a court of the United States and is bound to administer the jurisdiction conferred upon it.

No considerations of public policy or comity forbid the courts of the United States to exercise jurisdiction and decide this controversy on the merits.

The acts complained of were done in violation of an express statute of the United States. Costa Rica cannot give immunity to defendant for this offense, nor can exceptions be read into the Sherman Act not expressed in the act itself. *United States* v. *Union Pacific,* 91 U. S. 72, 91; *French* v. *Spencer,* 21 How. 238; *Demarest* v. *Wynkoop,* 3 Johns. Ch. 129, 142; *S. P. Chamberlain* v. *The Western Transportation Co.,* 44 N. Y. 305, 309; *Bank of Republic* v. *City of St. Joseph,* 21 Blatch. 436, 439.

Whatever value the principles of comity may have, they cannot be extended so far as to cloak a violation of the laws of the nation whose comity is appealed to. *The Santissima Trinidad,* 7 Wheat. 283, 354; *The Bello Corrunes,* 6 Wheat. 152, 169; *The Marianna Flora,* 11 Wheat. 1; *The Merino,* 9 Wheat. 391, 405; *La Jeune Eugenie,* 2 Mason, 409; *Underhill* v. *Hernandez,* 65 Fed. Rep. 577, affirmed 168 U. S. 250, discussed as not being in point. See also *People* v. *McLeod,* 25 Wend. 483.

The courts of this country can consider and collaterally pass upon the legality of acts of a foreign nation, in a suit between its own citizens. *Vasse* v. *Ball,* 2 Dall. 270, 275; 3 Kent's Comm. 303, 304; *The Santissima Trinidad,* 7 Wheat. 283, 351, 354; *The Estrella,* 4 Wheat. 298; *Angle* v. *Chicago, St. Paul &c. R. Co.,* 151 U. S. 119.

The extent of the rule is that a court cannot sit in judgment on the act of a foreign power where that act is directly drawn in question in a suit directly against such foreign power, or against an officer acting within its territory under its commands. *Nabob of Arcot* v. *East India Co.,* 4 Brown Ch. 131 (180); *The Duke of Brunswick* v. *The King of Hanover,* 6 Beav. 1 (affirmed 2 H. of L. 1); *Hatch* v. *Baez,* 7 Hun, 596; *Rafael* v. *Verelst,* 2 Wm. Blackstone, 1055.

The supposed government authority under which the act is done is in itself invalid. The Costa Rican officers, in destroying plaintiffs' property and business, were acting outside the territory of Costa Rica, and were making an usurping inroad on the territory of an adjoining friendly power. 1 Kent's Comm. 120. In considering the defense that an act was done under authority

of government, the courts have uniformly held that such authority must be valid or lawful. Suit against an officer for an unlawful act is not a suit against his sovereign. *Poindexter* v. *Greenhow*, 114 U. S. 270, 290; *Osborn* v. *The Bank*, 9 Wheat. 738; *Ex parte Young*, 209 U. S. 123, 159; *Litchfield* v. *Bond*, 186 N. Y. 66; *People* v. *McLeod*, 25 Wend. 483.

An injury to the private property of a citizen by an officer of government is justiciable in the courts of the country of which he is a citizen, even if it be an act of state. *Baird* v. *Walker*, L. R. (1892) App. Cas. 491, overruling upon this point, *Buron* v. *Denman*, 2 Ex. 167, if susceptible of the interpretation put upon it by the District Judges. That case, however, is an authority for plaintiff; and see *Feather* v. *The Queen*, 6 Best & Smith, 257, 296. See also *Little* v. *Barreme*, 2 Cranch, 170, 179; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Entick* v. *Harrington*, 19 State Trials, 1043; *Money* v. *Leach*, 3 Burr. 1742, 1762.

It is never a defense, even to an officer who has committed a tort, that he has acted on behalf of his government under circumstances like those in this case. *A fortiori* it can be no defense to the citizens of the country against whose laws the tort was committed that it was done through the agency of such officer. *Duke of Brunswick's Case*, 2 H. of L. 1; *Musgrave* v. *Pulido*, L. R. 5 App. Cas. 102, 112; 1 Goodnow, Comparative Administrative Law, 35, 36; *Moodaly* v. *Moreton & East India Co.*, 2 Dickens, 652.

Damage sustained by the plaintiff was inflicted in pursuance of defendant's illegal combination, and is therefore actionable under the statute. *United States* v. *Patterson*, 55 Fed. Rep. 605; *Shawnee Compress Co.* v. *Anderson*, 209 U. S. 423.

Defendant cannot complain because it alone is sued. Any member of such combination is liable for the acts of the combination, or any member of it, done in furtherance thereof. *Atlanta* v. *Chattanooga Foundry Co.*, 127 Fed. Rep. 23; *Chicago Coal Co.* v. *People*, 214 Illinois, 421, 453.

Acts done in pursuance of a combination are none the less done in pursuance thereof because done by only one member.

*United States* v. *Standard Oil Co.,* 152 Fed. Rep. 290; *Tobacco Trust Case,* 149 Fed. Rep. 823; Cooley on Torts (3d ed.), 213.

The statute applies to acts done in a foreign country. The objection that the acts complained of were done abroad is entitled to no weight. The parties to the suit are American citizens. The commerce restrained by defendant's acts was foreign commerce of the United States. Congress has full power to legislate in respect to that and has exercised the power in this statute. *Gibbons* v. *Ogden,* 9 Wheat. 1; *United States* v. *Knight,* 156 U. S. 1.

Acts done abroad by citizens of the United States are subject to its jurisdiction and legislative powers.

The commerce of the United States may by its statutes be protected from injury by acts done beyond its boundaries. Both of these powers have been frequently exercised and their validity is established in both criminal and civil cases. *United States* v. *Gordon,* 5 Blatch. 18; *The Slavers (Kate),* 2 Wall. 350; *United States* v. *Pirates,* 5 Wheat. 184; *United States* v. *Rauscher,* 119 U. S. 407, 433; *Carib Prince,* 170 U. S. 655; *The Silvia,* 171 U. S. 462; *The Chattahoochee,* 173 U. S. 540.

The language of the Sherman Act is as comprehensive as that of the Harter Act. It is a rule prescribed by Congress for interstate and international commerce. It guards such commerce against acts which threaten it, no matter where they are done, and more especially if they are done by citizens of the United States. *Northern Securities Case,* 193 U. S. 337; *Thomsen* v. *Union Castle Co.,* 166 Fed. Rep. 251.

This court has uniformly held in suits against common carriers that it would, in determining the validity of contracts made with them, or their liability for torts committed by them, apply the American and not the foreign law; and enforce the policy of American law. *Liverpool & G. W. Co.* v. *Phenix Ins. Co.,* 129 U. S. 397.

A State has the right to attach whatever consequences it chooses within its own territory to acts of its subjects. wherever

those acts may be done. Hall on Int. Law (5th ed.), 202; 1 Oppenheim, Int. Law, 195; Wharton, Crim. Law, § 271.

*Mr. Henry W. Taft* and *Mr. Moorfield Storey*, with whom *Mr. Walker B. Spencer* and *Mr. J. L. Thorndike* were on the brief, for defendant in error:

The plaintiff cannot recover for any injury caused to its property or business by the acts of Costa Rica.

The allegations of the complaint make it clear that the plantation, railroad and goods of the plaintiff were seized by the officers and soldiers of Costa Rica, and that their action in making this seizure has been approved and possession of the seized property has since been retained by the government of that state acting in the exercise of its *de facto* sovereignty over the territory in which the seizure was made.

The acts complained of were the acts of Costa Rica, and the damage claimed was caused by those acts. Whether they were originally ordered or only approved and ratified is immaterial. *Buron* v. *Denman*, 2 Exch. 167; *Underhill* v. *Hernandez*, 168 U. S. 250, 252; Webb's Pollock on Torts, pp. 132, 137.

The status and territorial jurisdiction of foreign states, their rights, powers and obligations, the rights and obligations of a citizen of the United States arising out of relations with a foreign government, and, conversely, the rights and obligations of a foreign state in dealing with a citizen of the United States, are necessarily political questions, which, under the Constitution of this government, are confided exclusively to the executive branch of the government, and with them the judicial branch has no concern. *Kennett* v. *Chambers*, 14 How. 38, 51; *Williams* v. *Suffolk Insurance Co.*, 13 Peters, 415; *United States* v. *Holliday*, 3 Wall. 419; *Duke of Brunswick* v. *King of Hanover*, 2 H. L. C. 1 (same case below, 6 Beavan, 1; 13 L. J. Ch. 107); *Secretary of State* v. *Kamachee*, 13 Moore, Privy Council, 22 (same case, English Reports Reprint, Vol. 15, p. 9); *Buron* v. *Denman* (1848), 2 Ex. 167; *Feather* v. *Queen* (1865), 6 B. & S. 257; *Doss* v. *Secretary of State*, 19 Equity, 509.

In this case the *de facto* sovereignty of Costa Rica is recognized by the State Department, and this recognition establishes the fact conclusively in the courts of the United States. It is immaterial whether Costa Rica had jurisdiction and sovereignty over this territory in dispute, or whether its attempt to exercise such jurisdiction was by legal right or was an act of war or aggression against the Republic of Panama. *Underhill* v. *Hernandez*, 168 U. S. at p. 252.

Redress for injuries caused to a citizen of a foreign nation by another nation through the exercise of *de facto* powers, even though maintained by means of force alone, cannot be had in the ordinary municipal courts of another nation, nor even in the courts of the offending nation without its consent. It can only be had in the forum of international relations.

The acts are alleged to have been done entirely in a foreign country, with which the Sherman Act has nothing to do.

The alleged acts of the defendant in inducing the acts of Costa Rica had no direct or indirect relation to commerce between Panama and the United States. They were acts committed in Costa Rica. Their tortious character does not alter the fact that their direct effect was on production and not on trade. The direct effect of the defendant's acts was to injure production only. *United States* v. *E. C. Knight Co.*, 156 U. S. 1; *In re Greene*, 52 Fed. Rep. 104; *Chesapeake & Ohio Fuel Co.* v. *United States*, 115 Fed. Rep. 623; *Coe* v. *Errol*, 116 U. S. 517; *Kidd* v. *Pearson*, 128 U. S. 1; *Dudley* v. *Briggs*, 141 Massachusetts, 582.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action brought to recover threefold damages under the Act to Protect Trade against Monopolies. July 2, 1890, c. 647, § 7. 26 Stat. 209, 210. The Circuit Court dismissed the complaint upon motion, as not setting forth a cause of action. 160 Fed. Rep. 184. This judgment was affirmed by the Circuit Court of Appeals, 166 Fed. Rep. 261, and the case then was brought to this court by writ of error.

The allegations of the complaint may be summed up as follows: The plaintiff is an Alabama corporation, organized in 1904. The defendant is a New Jersey corporation, organized in 1899. Long before the plaintiff was formed, the defendant, with intent to prevent competition and to control and monopolize the banana trade, bought the property and business of several of its previous competitors, with provision against their resuming the trade, made contracts with others, including a majority of the most important, regulating the quantity to be purchased and the price to be paid, and acquired a controlling amount of stock in still others. For the same purpose it organized a selling company, of which it held the stock, that by agreement sold at fixed prices all the bananas of the combining parties. By this and other means it did monopolize and restrain the trade and maintained unreasonable prices. The defendant being in this ominous attitude, one McConnell in 1903 started a banana plantation in Panama, then part of the United States of Colombia, and began to build a railway (which would afford his only means of export), both in accordance with the laws of the United States of Colombia. He was notified by the defendant that he must either combine or stop. Two months later, it is believed at the defendant's instigation, the governor of Panama recommended to his national government that Costa Rica be allowed to administer the territory through which the railroad was to run, and this although that territory had been awarded to Colombia under an arbitration agreed to by treaty. The defendant, and afterwards, in September, the government of Costa Rica, it is believed by the inducement of the defendant, interfered with McConnell. In November, 1903, Panama revolted and became an independent republic, declaring its boundary to be that settled by the award. In June, 1904, the plaintiff bought out McConnell and went on with the work, as it had a right to do under the laws of Panama. But in July, Costa Rican soldiers and officials, instigated by the defendant, seized a part of the plantation and a cargo of supplies and have held them ever since, and stopped the construction and operation

of the plantation and railway. In August one Astua, by *ex parte* proceedings, got a judgment from a Costa Rican court, declaring the plantation to be his, although, it is alleged, the proceedings were not within the jurisdiction of Costa Rica, and were contrary to its laws and void. Agents of the defendant then bought the lands from Astua. The plaintiff has tried to induce the government of Costa Rica to withdraw its soldiers and also has tried to persuade the United States to interfere, but has been thwarted in both by the defendant and has failed. The government of Costa Rica remained in possession down to the bringing of the suit.

As a result of the defendant's acts the plaintiff has been deprived of the use of the plantation, and the railway, the plantation and supplies have been injured. The defendant also, by outbidding, has driven purchasers out of the market and has compelled producers to come to its terms, and it has prevented the plaintiff from buying for export and sale. This is the substantial damage alleged. There is thrown in a further allegation that the defendant has "sought to injure" the plaintiff's business by offering positions to its employés and by discharging and threatening to discharge persons in its own employ who were stockholders of the plaintiff. But no particular point is made of this. It is contended, however, that, even if the main argument fails and the defendant is held not to be answerable for acts depending on the coöperation of the government of Costa Rica for their effect, a wrongful conspiracy resulting in driving the plaintiff out of business is to be gathered from the complaint and that it was entitled to go to trial upon that.

It is obvious that, however stated, the plaintiff's case depends on several rather startling propositions. In the first place the acts causing the damage were done, so far as appears, outside the jurisdiction of the United States and within that of other states. It is surprising to hear it argued that they were governed by the act of Congress.

No doubt in regions subject to no sovereign, like the high seas, or to no law that civilized countries would recognize as

adequate, such countries may treat some relations between their citizens as governed by their own law, and keep to some extent the old notion of personal sovereignty alive. See *The Hamilton*, 207 U. S. 398, 403; *Hart* v. *Gumpach*, L. R. 4 P. C. 439, 463, 464; *British South Africa Co.* v. *Companhia de Moçambique* [1893], A. C. 602. They go further, at times, and declare that they will punish any one, subject or not, who shall do certain things, if they can catch him, as in the case of pirates on the high seas. In cases immediately affecting national interests they may go further still and may make, and, if they get the chance, execute similar threats as to acts done within another recognized jurisdiction. An illustration from our statutes is found with regard to criminal correspondence with foreign governments. Rev. Stat., § 5335. See further *Commonwealth* v. *Macloon*, 101 Massachusetts, 1; *The Sussex Peerage*, 11 Cl. & Fin. 85, 146. And the notion that English statutes bind British subjects everywhere has found expression in modern times and has had some startling applications. *Rex* v. *Sawyer*, 2 C. & K. 101; *The Zollverein*, Swabey, 96, 98. But the general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done. *Slater* v. *Mexican National R. R. Co.*, 194 U. S. 120, 126. This principle was carried to an extreme in *Milliken* v. *Pratt*, 125 Massachusetts, 374. For another jurisdiction, if it should happen to lay hold of the actor, to treat him according to its own notions rather than those of the place where he did the acts, not only would be unjust, but would be an interference with the authority of another sovereign, contrary to the comity of nations, which the other state concerned justly might resent. *Phillips* v. *Eyre*, L. R. 4 Q. B. 225, 239; L. R. 6 Q. B. 1, 28; Dicey, Conflict of Laws (2d ed.), 647. See also Appendix, 724, 726, Note 2, *ibid*.

Law is a statement of the circumstances in which the public force will be brought to bear upon men through the courts. But the word commonly is confined to such prophecies or threats when addressed to persons living within the power of

the courts. A threat that depends upon the choice of the party affected to bring himself within that power hardly would be called law in the ordinary sense. We do not speak of blockade running by neutrals as unlawful. And the usages of speech correspond to the limit of the attempts of the lawmaker, except in extraordinary cases. It is true that domestic corporations remain always within the power of the domestic law, but in the present case, at least, there is no ground for distinguishing between corporations and men.

The foregoing considerations would lead in case of doubt to a construction of any statute as intended to be confined in its operation and effect to the territorial limits over which the lawmaker has general and legitimate power. "All legislation is *prima facie* territorial." *Ex parte Blain, In re Sawers*, 12 Ch. Div. 522, 528; *State* v. *Carter*, 27 N. J. (3 Dutcher) 499; *People* v. *Merrill*, 2 Parker, Crim. Rep. 590, 596. Words having universal scope, such as "Every contract in restraint of trade," "Every person who shall monopolize," etc., will be taken as a matter of course to mean only every one subject to such legislation, not all that the legislator subsequently may be able to catch. In the case of the present statute the improbabilty of the United States attempting to make acts done in Panama or Costa Rica criminal is obvious, yet the law begins by making criminal the acts for which it gives a right to sue. We think it entirely plain that what the defendant did in Panama or Costa Rica is not within the scope of the statute so far as the present suit is concerned. Other objections of a serious nature are urged but need not be discussed.

For again, not only were the acts of the defendant in Panama or Costa Rica not within the Sherman Act, but they were not torts by the law of the place and therefore were not torts at all, however contrary to the ethical and economic postulates of that statute. The substance of the complaint is that; the plantation being within the *de facto* jurisdiction of Costa Rica, that state took and keeps possession of it by virtue of its sovereign power. But a seizure by a state is not a thing that can be

complained of elsewhere in the courts. *Underhill* v. *Hernandez,* 168 U. S. 250. The fact, if it be one, that *de jure* the estate is in Panama does not matter in the least; sovereignty is pure fact. The fact has been recognized by the United States, and by the implications of the bill is assented to by Panama.

The fundamental reason why persuading a sovereign power to do this or that cannot be a tort is not that the sovereign cannot be joined as a defendant or because it must be assumed to be acting lawfully. The intervention of parties who had a right knowingly to produce the harmful result between the defendant and the harm has been thought to be a non-conductor and to bar responsibility, *Allen* v. *Flood* [1898], A. C. 1, 121, 151, etc., but it is not clear that this is always true, for instance, in the case of the privileged repetition of a slander, *Elmer* v. *Fessenden,* 151 Massachusetts, 359, 362, 363, or the malicious and unjustified persuasion to discharge from employment. *Moran* v. *Dunphy,* 177 Massachusetts, 485, 487. The fundamental reason is that it is a contradiction in terms to say that within its jurisdiction it is unlawful to persuade a sovereign power to bring about a result that it declares by its conduct to be desirable and proper. It does not, and foreign courts cannot, admit that the influences were improper or the results bad. It makes the persuasion lawful by its own act. The very meaning of sovereignty is that the decree of the sovereign makes law. See *Kawananakoa* v. *Polyblank,* 205 U. S. 349, 353. In the case of private persons it consistently may assert the freedom of the immediate parties to an injury and yet declare that certain persuasions addressed to them are wrong. See *Angle* v. *Chicago, St. Paul, Minneapolis & Omaha Ry. Co.,* 151 U. S. 1, 16–21; *Fletcher* v. *Peck,* 6 Cranch, 87, 130, 131.

The plaintiff relied a good deal on *Rafael* v. *Verelst,* 2 Wm. Bl. 983; *Ib.* 1055. But in that case, although the Nabob who imprisoned the plaintiff was called a sovereign for certain purposes, he was found to be the mere tool of the defendant, an English Governor. That hardly could be listened to concerning a really independent state. But of course it is not alleged

that Costa Rica stands in that relation to the United Fruit Company.

The acts of the soldiers and officials of Costa Rica are not alleged to have been without the consent of the government and must be taken to have been done by its order. It ratified them, at all events, and adopted and keeps the possession taken by them; *O'Reilly de Camara* v. *Brooke,* 209 U. S. 45, 52; *The Paquete Habana,* 189 U. S. 453, 465; *Dempsey* v. *Chambers,* 154 Massachusetts, 330, 332. The injuries to the plantation and supplies seem to have been the direct effect of the acts of the Costa Rican government, which is holding them under an adverse claim of right. The claim for them must fall with the claim for being deprived of the use and profits of the place. As to the buying at a high price, etc., it is enough to say that we have no ground for supposing that it was unlawful in the countries where the purchases were made. Giving to this complaint every reasonable latitude of interpretation we are of opinion that it alleges no case under the act of Congress and discloses nothing that we can suppose to have been a tort where it was done. A conspiracy in this country to do acts in another jurisdiction does not draw to itself those acts and make them unlawful, if they are permitted by the local law.

Further reasons might be given why this complaint should not be upheld, but we have said enough to dispose of it and to indicate our general point of view.

*Judgment affirmed.*

MR. JUSTICE HARLAN concurs in the result.