**UNITED STATES of America,**
**Appellee,**

v.

**Jean Philomena PIZZARUSSO,**
**Defendant-Appellant.**

**No. 155, Docket 31392.**

United States Court of Appeals
Second Circuit.

Argued Nov. 8, 1967.

Decided Jan. 9, 1968.

John H. Adams, Asst. U. S. Atty., New York City (John H. Doyle, III, Pierre N. Leval, Asst. U. S. Attys., and Robert M. Morgenthau, U. S. Atty., for S. D. New York, New York City, on the brief), for appellee.

Carol Ryan, New York City (Anthony F. Marra, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge and MEDINA and HAYS, Circuit Judges.

MEDINA, Circuit Judge:

This case is of interest because it brings before this Court for the first time the question of the jurisdiction of the District Court to indict and convict a foreign citizen of the crime of knowingly making a false statement under oath in a visa application to an American consular official located in a foreign country, in violation of 18 U.S.C. Section 1546.[1] Supreme Court cases give some

1. *Fraud and misuse of visas, permits,*
*and other entry documents*

   *      *      *      *      *

   Whoever knowingly makes under oath any false statement with respect to a ma-

terial fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other docu-

guidance but none of them passes on this question directly.[2] A Ninth Circuit decision, Rocha v. United States, 288 F. 2d 545 (9th Cir.), cert. denied 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241 (1961), is in point but we sustain jurisdiction on the basis of somewhat different reasons.

The indictment charges that on March 4, 1965 Jean Philomena Pizzarusso wilfully made under oath a number of false statements in her "Application for Immigrant Visa And Alien Registration" at the American Consulate, Montreal, Canada. Each of these false statements was patently material to the matter in hand. For example: she falsely swore that since her sixteenth birthday her only places of residence for six months or more had been London, England and Montreal, Canada; she falsely swore that she had been in the United States only for short visits for pleasure; she falsely swore that she had never been arrested, and so on. Although at all times pertinent to this case she was a citizen of Canada, she was taken into custody in the Southern District of New York on April 18, 1966.

■ Upon the issuance of the visa and by its use Mrs. Pizzarusso immediately entered the territory of the United States, but this fact is not alleged in the indictment nor required by the terms of the statute, nor is it material, as we find the crime was complete when the false statements were made to an American consular official in Montreal. We shall return later to this feature of the case.

■ The evidence to sustain the charge is so overwhelming that we shall not pause to discuss it. Indeed, the only contention made on this appeal is that

the District Court lacked jurisdiction to indict appellant and convict her of the crime alleged.[3] As we find no lack of jurisdiction, we affirm the judgment. Our reasons follow.

I.

18 U.S.C. Section 1546 is a significant and integral part of the pattern of immigration laws, including those affecting passports and visas. We think the Congress by the enactment of this law contemplated that it would be applied extraterritorially. Visas are documents issued to aliens permitting them to enter the country. In the ordinary course of events we would naturally expect false statements in visa applications to be made outside the territorial limits of the United States. This would seem to overcome the strong presumption that the Congress did not intend the statute to apply extraterritorially. See American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909).

■ We can readily understand Congressional concern with the procedure governing the issuance of visas. Our national government has a legitimate interest in ascertaining the background of individuals seeking admission to the United States. The power of the United States to prescribe conditions regulating the issuance of visas is derived from its inherent power to "enact legislation for the effective regulation of foreign affairs." Perez v. Brownell, 356 U.S. 44, 57, 78 S.Ct. 568, 575, 2 L.Ed.2d 603 (1958). See United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936); The Chinese Exclusion Case, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889).

■ The utterance by an alien of a "false statement with respect to a material fact" in a visa application consti-

---

ment containing any such false statement—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922) cited by appellee as authority for upholding juris-

diction in the instant case is distinguishable as that case involved imposition of criminal liability on United States citizens for acts committed abroad.

3. Appellant received a one-year suspended sentence and was placed on probation for two years.

tutes an affront to the very sovereignty of the United States. These false statements must be said to have a deleterious influence on valid governmental interests. Therefore, 18 U.S.C. Section 1546, as applied to an alien's perjurious statements before a United States consular officer in a foreign country, represents a law which is "necessary and proper for carrying into Execution," U.S.Const. Art. I, Section 8, the Congressional power over the conduct of foreign relations.

## II.

Although the broad question whether principles of international law are to be considered by our courts in deciding the cases before them may not be entirely free from doubt, compare Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) [4] with The Paquete Habana, 175 U.S. 677, 700, 20 S.Ct. 290, 44 L.Ed. 320 (1900), we hold that under well recognized principles of international law the court below clearly had jurisdiction.

International law has recognized, in varying degrees, five bases of jurisdiction with respect to the enforcement of the criminal law. See Harvard Research In International Law, Jurisdiction with Respect to Crime, 29 Am.J.Int'l L.Spec. Supp. 435, 445 (1935) (hereinafter cited as Harvard Research). Thus both the territoriality and nationality principles, under which jurisdiction is determined by either the situs of the crime or the nationality of the accused, are universally accepted. The third basis, the protective principle, covers the instant case. By virtue of this theory a state "has jurisdiction to prescribe a rule of law attaching legal consequences to conduct outside its territory that threatens its security as a state or the operation of its governmental functions, provided the conduct

is generally recognized as a crime under the law of states that have reasonably developed legal systems." Restatement (Second), Foreign Relations, Section 33 (1965). See also Harvard Research Section 7.[5]

Traditionally, the United States has relied primarily upon the territoriality and nationality principles, Harvard Research at p. 543, and judges have often been reluctant to ascribe extraterritorial effect to statutes. See, e. g., American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909). Nonetheless, our courts have developed what has come to be termed the objective territorial principle as a means of expanding the power to control activities detrimental to the state. This principle has been aptly defined by Mr. Justice Holmes in Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911). "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect * * *." See also Judge Learned Hand's opinion in United States v. Aluminum Co. of America, 148 F.2d 416 (2d Cir. 1945). Underlying this principle is the theory that the "detrimental effects" constitute an element of the offense and since they occur within the country, jurisdiction is properly invoked under the territorial principle. See also Restatement (Second), Foreign Relations Law Section 18.

However, the objective territorial principle is quite distinct from the protective theory. Under the latter, all the elements of the crime occur in the foreign country and jurisdiction exists because these actions have a "potentially adverse effect" upon security or governmental

---

4. The Hickenlooper Amendment, 22 U.S.C. Section 2370(e) (2) effectively reversed the holding of the Sabbatino case. On remand the Court of Appeals, now required by the Amendment to apply principles of international law, held that the taking of property by the Cuban government violated those principles. Banco Nacional de Cuba v. Farr, 383 F.2d 166 (2d Cir. 1967).

5. The other two principles are universality, where jurisdiction is determined by the custody of the person committing the offense and passive personality where jurisdiction is determined by reference to the nationality of the person injured. Harvard Research at p. 445.

functions, Restatement (Second) Foreign Relations Law, Comment to Section 33 at p. 93, and there need not be any actual effect in the country as would be required under the objective territorial principle. Courts have often failed to perceive this distinction. Thus, the Ninth Circuit,[6] in upholding a conviction under a factual situation similar to the one in the instant case, relied on the protective theory, but still felt constrained to say that jurisdiction rested partially on the adverse effect produced as a result of the alien's entry into the United States. The Ninth Circuit also cited *Strassheim* and *Aluminum Company of America* as support for its decision. With all due deference to our brothers of the Ninth Circuit, however, we think this reliance is unwarranted. A violation of 18 U.S.C. Section 1546 is complete at the time the alien perjures himself in the foreign country. It may be possible that the particular criminal sanctions of Section 1546 will never be enforced unless the defendant enters the country, but entry is not an element of the statutory offense. Were the statute re-drafted and entry made a part of the crime we would then be presented with a clear case of jurisdiction under the objective territorial principle.

Statutes imposing criminal liability on aliens for committing perjury in United States Consulates in foreign countries have been in existence for over one hundred years, see, e. g., 22 U.S.C. Section 1203, which was derived from an act of 1856, and oftentimes courts have routinely sustained convictions without even considering the jurisdictional question. See, e. g., United States v. Flores-Rodriguez, 237 F.2d 405 (2d Cir. 1956).[7] Only one court has ever held that the United States did not have jurisdiction to proceed against an alien under the leg-

islation governing this case. United States v. Baker, 136 F.Supp. 546 (S.D. N.Y.1955). In *Baker* it was conceded that there was authority for deporting an alien for making perjurious statements to a United States Consul, United States ex rel. Majka v. Palmer, 67 F.2d 146 (7th Cir. 1933), but the court thought the imposition of criminal sanctions was "far different" from deportation and dismissed the indictment. We would have sustained jurisdiction in *Baker* had the case been before us, and in this view we are apparently joined by the judge who decided *Baker,* since he presided over the instant case in the court below.

Affirmed.

---

6. Rocha v. United States, 288 F.2d 545 (9th Cir.), cert. denied 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241 (1961).

7. One other court has upheld jurisdiction under a statute comparable to 18 U.S.C. Section 1546 on an alternative ground. The District Court for the Southern Dis-

trict of California, relying in part on the territorial principle, sustained the conviction of an alien for false swearing in a visa application, on the somewhat novel theory that the United States Consulate was part of United States territory. United States v. Archer, 51 F.Supp. 708 (S.D.Cal.1943).