**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francesco COLUMBA–COLELLA,
Defendant-Appellant.**

No. 78–5678.

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1979.

Harry Lee Hall, Asst. Fed. Public Defender, El Paso, Tex., for defendant-appellant.

Le Roy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, CLARK and GEE, Circuit Judges.

WISDOM, Circuit Judge:

In this case, unfortunately, the legally correct result produces something like declaring an open season on motor vehicles in American border towns—provided that the recipient of the stolen vehicles escapes the clutches of Mexican and Canadian law. Nevertheless, for lack of jurisdiction, we must reverse the district court's judgment entering defendant Francesco Columba-Colella's plea of guilty to the offense of receiving a stolen vehicle in foreign commerce in violation of 18 U.S.C. § 2313. The criminal offense occurred in Mexico.

## I.

On the evening of August 21, 1978, Francesco Columba-Colella met a young man named Keith in Curley's Bar in Juarez, Mexico. The two struck up a conversation and became casual friends. Two days later they met again by chance at five-thirty in the afternoon on a Juarez street. Keith told Francesco he wanted to sell a car, and Francesco, who had lived in Juarez for at least two years, responded that he knew someone who might be interested in buying it. Keith then informed him for the first time that the car had been stolen in El Paso, Texas, and offered Francesco half the proceeds of any sale he could arrange. Francesco assented, took the keys to the car, a Ford Fairmont, and agreed to meet Keith the next day at 2:00 p. m. in The Kentucky Bar in Juarez. The meeting was not to take place. Later, the same evening, as Francesco was approaching the car with his wife, he was arrested by Mexican police.

The defendant, who was nineteen years old, resided in Juarez, where he lived with the Mexican woman whom he had married in 1976. He is a British citizen who was not employed in the United States and did not own property in the United States. He intended to reside permanently in Mexico and become a Mexican citizen.

After the defendant's motion to dismiss was denied, Columba-Colella pleaded guilty, but reserved the right to appeal the jurisdictional issue. The trial court committed him to the custody of the Attorney General for five years.

## II.

■ The only question raised on appeal is whether the lower court had jurisdiction over the case. Had the defendant been a United States citizen, there would be no jurisdictional problem, for a country may supervise and regulate the acts of its citizens both within and without its territory. *See, e. g., Blackmer v. United States,* 1932, 284 U.S. 421, 437, 52 S.Ct. 252, 76 L.Ed. 375; *The Apollon,* 1824, 22 U.S. (9 Wheat.) 362, 369–70, 6 L.Ed. 111; *United States v. King,* 9 Cir. 1976, 552 F.2d 833, 851, *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357; *United States v. Pizzaruzzo,* 2 Cir. 1968, 388 F.2d 8, 10, *cert. denied,* 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395; *Rocha v. United States,* 9 Cir. 1961, 288 F.2d 545, 548, *cert. denied,* 366 U.S. 948, 81 S.Ct. 1902, 6 L.Ed.2d 1241. *See also* Restatement (2d) of Foreign Relations Law of the United States § 30(1).

■ When an allegedly criminal act is performed by an alien on foreign soil courts in the United States have long held that if jurisdiction is to be extended over that act, it must be supported by either the *protective* or the *objective territorial* theory. Under the protective theory, which does not bear on the resolution of the case before us, a country's legislature is competent to enact laws and, assuming physical power over the defendant, its courts have jurisdiction to enforce criminal laws wherever and by whomever the act is performed that threatens the country's security or directly interferes with its governmental operations. A state/nation is competent, for example, to punish one who has successfully defrauded its treasury, no matter where the fraudulent scheme was perpetrated. *United States v. Fernandez,* 5 Cir. 1974, 496 F.2d 1294, 1296. *See also United States v. Bowman,* 1922, 260 U.S. 94, 97–98, 43 S.Ct. 39, 67 L.Ed. 149; *United States v. Vicars,* 5 Cir. 1972, 467 F.2d 452, 456 (per curiam), *cert. denied,* 410 U.S. 967, 93 S.Ct. 1451, 35 L.Ed.2d 702; *United States v. Williams,* 2 Cir. 1972, 464 F.2d 599, 601; *United States v. Pizzaruzzo,* 2 Cir. 1968, 388 F.2d 8, 10–11, *cert. denied,* 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395; Restatement (2d) of Foreign Relations Law of the United States § 18.

■ The objective territorial theory looks not to interference with governmental interests but to objective effects within the sovereign state. The theory requires that before a state may attach criminal consequences to an extraterritorial act, the act must be intended to have an effect within the state. As Mr. Justice Holmes announced the theory, in the context of an interstate extradition:

Acts done outside a jurisdiction, but intended to produce and producing effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power. *Strassheim v. Daily,* 1911, 221 U.S. 280, 284–85, 31 S.Ct. 558, 560, 55 L.Ed. 735. Assume, for example, that persons or their agents conspire to rent a boat in Miami, sail it beyond United States coastal waters, and load it with a cargo of illegal drugs. Then, en route to a United States port but while still on the high seas, the conspirators are apprehended. This country may under the objective territorial theory apply its drug laws to punish them if it can establish intent to violate those laws. *See United States v. Postal,* 5 Cir. 1979, 589 F.2d 862; *United States v. Cadena,* 5 Cir. 1979, 588 F.2d 100; *United States v. Winter,* 5 Cir. 1975, 509 F.2d 975, 980–83, *cert. denied sub nom. Parks v. United States,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41.

### III.

■ There is no basis for jurisdiction over the defendant in the present case. He is not a United States citizen. He has not threatened the security of this country or interfered with its governmental function. Although the objective territorial theory applies, the fact that no conspiracy has been alleged means that the theory does not support jurisdiction in the case.

Had a conspiracy been demonstrated, the defendant could be said to have been engaged in a criminal enterprise, an essential element of which, the theft, occurred in the United States. Had Columba-Colella's intent anticipated and embraced the car theft in Texas, that act could be imputed to him. And since the United States is competent to proscribe the theft of property within its borders, it would then have had the jurisdiction it asserts in this case.

The defendant did not conspire to steal the car, and the theft in no way depended on any act or intent of the defendant. Whatever injury the owner of the car suffered was complete before Columba-Colel-

la's chance meeting with Keith on the street in Juarez on the afternoon of August 22, 1978, and the agreement their meeting produced. To put it differently, though Columba-Colella's agreement to fence the car followed Keith's crime, his act, which may have been a crime under Mexican law, is legally unrelated to the prior crime. His act was no constituent element of Keith's act and is not made so by the coincidence that the property subject to their agreement belonged to a citizen of the jurisdiction in which the theft occurred.

■ The district judge relied on *United States v. Fernandez,* 5 Cir. 1974, 496 F.2d at 1294, in finding he had jurisdiction over the case. In *Fernandez,* the defendant was charged with possessing, forging, and uttering stolen United States Treasury checks. The defendant argued that this Court lacked jurisdiction because all the criminal acts involved were alleged to have taken place not in the United States but in Mexico. In finding that there was jurisdiction, we noted that the defendant's acts "prevent[ed] the normal disbursement of Social Security Funds to those lawfully entitled to receive such funds". 496 F.2d at 1296. The *Fernandez* case parallels a case in the Second Circuit, *United States v. Pizzaruzzo,* 2 Cir. 1968, 388 F.2d 8, *cert. denied,* 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395. There the court held it had jurisdiction to enforce a criminal penalty against an alien who knowingly supplied false information to a federal official in the course of obtaining a United States passport in an American consulate abroad. Although the *Fernandez* court referred to both the objective territorial and protective theories, the cases relied on the protective theory of jurisdiction. In each case the alien intended to and did directly interfere with one of the functions of the United States government. The district court's reliance on *Fernandez* is misplaced in this case, for here there was no interference with a governmental function, and therefore no reason to invoke the protective theory.

## IV.

There is no question, of course, that Columba-Colella's conduct somehow affected a United States citizen. Had he been successful in his enterprise, he would have prevented the stolen car from finding its way back to its owner. But that an act affects the citizen of a state is not a sufficient basis for that state to assert jurisdiction over the act. It is difficult to distinguish the present case from one in which the defendant had attempted not to fence a stolen car but instead to pick the pockets of American tourists in Acapulco. No one would argue either that Congress would be competent to prohibit such conduct or that the courts of the United States would have jurisdiction to enforce such a prohibition were the offender in their control. Indeed, Congress would not be competent to attach criminal sanctions to the murder of an American by a foreign national in a foreign country, even if the victim returned home and succumbed to his injuries. *See* Restatement (2d) of Foreign Relations Law of the United States §§ 18, 30(2).

These hypothetical cases involve criminal conduct that takes place wholly within a country, and whose character must therefore be determined by the law of the place where the act was done. The present case is similar. We therefore follow the method set out in *American Banana Co. v. United Fruit Co.*, 1909, 213 U.S. 347, 357, 29 S.Ct. 511, 53 L.Ed. 826, 832. *See also United States v. Aluminum Company of America*, 2 Cir. 1945, 148 F.2d 416, 443. We find that because the defendant's act in this case is beyond its competence to proscribe, Congress did not intend to assert jurisdiction here under 18 U.S.C. § 2313.

In contradistinction to the present case are the drug importation cases of this Court. These cases have applied the federal drug laws to the conduct of aliens, even when apprehended beyond United States coastal waters, engaged in importing illegal drugs. *United States v. Postal*, 5 Cir. 1979, 589 F.2d 862; *United States v. Cadena*, 5 Cir. 1979, 588 F.2d 100; *United States v. Winter*, 5 Cir. 1975, 509 F.2d 975, *cert. de-*nied sub nom. *Parks v. United States*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41; *Rivard v. United States*, 5 Cir. 1967, 375 F.2d 882, *cert. denied sub nom. Groleau v. United States*, 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181; *Marin v. United States*, 5 Cir. 1965, 352 F.2d 174. The cases thus far decided have all involved conspiracies, in which aliens who had themselves performed no act within the United States have had imputed to them the acts of coconspirators which were performed in the United States. We recently suggested in *United States v. Postal*, 5 Cir. 1979, 589 F.2d 862, 886 n.39, however, that there might be jurisdiction in a drug case under 21 U.S.C. § 963 (1976), even absent overt acts performed within United States territory, if there were proof of intent to produce territorial effects. Though the question remains open whether jurisdiction would be proper in that case, we note that such an assertion of jurisdiction would not be inconsistent with our holding in the present case. If intent can be proved, the interrupted process of carrying out in the United States acts in contravention of United States laws might be sufficient to serve as the basis of jurisdiction even absent overt acts committed here. In the present case, however, as we mentioned, the defendant's intent need never have touched upon the United States; his acts may adequately be described without any reference to this country or any anticipated detrimental effects within it. Unlike the enterprise of smugglers on the high seas, Columba-Colella's act does not cast a sufficient shadow on the United States to permit jurisdiction.

## V.

The practical problem we face is that our decision may encourage car thefts in border towns. Two facts limit this encouragement. In the ordinary case, as the United States Attorney averred in oral argument before this Court, a conspiracy will be charged and proved. When this is possible, there is no jurisdictional problem. And even where a conspiracy cannot be shown, each sovereign may punish the wrongful act

committed in its territory: when we release Columba-Colella, he will be subject to whatever sanctions are applicable under the law of Mexico.

The result we reach is part of the price a nation must pay to support mutuality of comity between sovereign nations.

The judgment is REVERSED and the charge is DISMISSED.