# UNITED STATES of America

## v.

## Efrain VELASQUEZ–MERCADO.

### Crim. No. L–88–71.

United States District Court,
S.D. Texas,
Laredo Division.

March 31, 1988.

Louis Menendez, Asst. Public Defender, Laredo, Tex., for defendant.

Jeffery A. Babcock, San Antonio, Tex., for the U.S.

## ORDER

KAZEN, District Judge.

Defendant moves to dismiss counts 1 through 23 of the indictment for lack of jurisdiction. These counts charge the Defendant with committing various sexual offenses against two females in the Republic of Mexico and in Guatemala. Defendant alleges, and the Government concedes, that both the Defendant and the two victims are undocumented aliens. The counts attempt to charge violations of Title 18, U.S.C. §§ 2241(a)(2), 2242, 2244, and 113.

Defendant relies primarily upon *United States v. Columba–Colella*, 604 F.2d 356 (5th Cir.1979), which describes the various theories under which United States courts can exercise jurisdiction over offenses occurring in foreign countries. For example, if the defendant is a United States citizen, this country may supervise and regulate his acts both within and without its territory. 604 F.2d at 358. If the allegedly criminal act is performed by an alien on foreign soil, jurisdiction in the United States must be supported by either the protective or objective territorial theories. The protective theory grants jurisdiction whenever the criminal conduct threatens this country's security or directly interferes with its governmental operations. *Id.* The sexual assaults in this case do not fall within that theory.

The objective territorial theory requires that the extraterritorial act be intended to have an effect within this country. Despite language in the indictment alleging that these sexual offenses were committed "while in the course of committing the offense of bringing, encouraging and inducing aliens into the United States,"

they are clearly separate offenses. It simply cannot be said that the act of sexually assaulting a woman in Guatemala or Mexico was intended to have any effect within the United States merely because the defendant was otherwise helping to bring the victim to this country.

More importantly, however, the statutes in question themselves foreclose the Government's attempt to exercise jurisdiction in this case. As indicated in *United States v. Baker*, 609 F.2d 134 (5th Cir. 1980), before exploring whether any theory of international law supports a congressional effort to apply our criminal laws extraterritorially, the initial question is whether the Congress even intended such an application. Criminal statutes are given extraterrorial application only if "the nature of the law permits it and Congress intends it." 609 F.2d at 136. The exercise of extraterritorial jurisdiction may be inferred from the nature of the offenses but only "[a]bsent an express intention on the face of the statutes." *Id.* In the leading case of *United States v. Bowman*, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922), the court stated:

> "The necessary locus, *when not specially defined,* depends upon the purpose of Congress as evinced by the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nations." (Emphasis added).

260 U.S. at 97–98, 43 S.Ct. at 41.

In the instant case, Congress has explicitly placed a territorial limitation upon the applicability of the statutes in question. The express language of §§ 2241, 2242, 2244, and 113 provides that the prohibited conduct must occur "within the special maritime and territorial jurisdiction of the United States." That phrase, in turn, is defined in 18 U.S.C. § 7. None of the definitions therein apply to this case.

The Government's reliance on cases involving attempts to import or distribute narcotics in this country, and references to crimes of slavery, international kidnapping, or acts of terrorism ignore the plain language of the statutes charged in this indict-ment. The following language from *Bowman*, is instructive:

> "Crimes against private individuals ... like assaults ... which affect the peace and good order of the community, must of course be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and *failure to do so will negate the purpose of Congress in this regard."*

260 U.S. at 98, 43 S.Ct. at 41.

In the instant case, Congress has not only failed to provide that these statutes should apply in foreign nations, but has expressly limited their intended territorial application.

The Government's reliance on 18 U.S.C. § 3238 is misplaced. Contrary to the Government's argument, that statute clearly deals with venue. It is not an independent source of extraterritorial jurisdiction, and nothing in *United States v. Walczak*, 783 F.2d 852 (9th Cir.1986) holds to the contrary. In *Walczak*, jurisdiction was based on the fact that the defendant was a United States citizen who made a false statement on a United States Customs Service form at an international airport in Canada. In *United States v. Williams*, 589 F.2d 210, 212 (5th Cir.1979), the court explicitly described § 3238 as a venue statute. The legislative history of § 3238 describes that section as being "designed to cure two important defects in the present venue statutes." S.Rep. No. 146, 88th Cong., 1st Sess. *reprinted in* 1963 U.S. Code Cong. & Admin.News 660. The report further indicates that § 3238 would "sustain and implement" the Supreme Court decision in *Bowman, supra. Id.* at 661. As previously discussed, *Bowman* dictates an absence of jurisdiction in this case.

The motion to dismiss is GRANTED.