Rev. Philip ZWERLING, et
al., Plaintiffs,

v.

Ronald W. REAGAN, President of the
United States of America, Defendant.

No. 83–2504–R.

United States District Court,
C.D. California.

Dec. 22, 1983.

Gilbert Gaynor, Eve Triffo, Fred Okrand, Los Angeles, .Cal., for plaintiffs.

Christine L. Jones, Paul Blankenstein, Asst. U.S. Attys., Dept. of Justice, Washington, D.C., for defendant.

## OPINION

REAL, Chief Judge.

Plaintiffs include twelve clergymen, four Christian and eight non-Christian, two Buddhist laymen, an atheist and an agnostic. The plaintiffs complain that P.L. 97–280[1] and the Proclamation[2] of President Ronald

1. P.L. 97–280 (S.J.Res. 165) states:

    YEAR OF THE BIBLE–DESIGNATION
    Joint Resolution authorizing and requesting the President to proclaim 1983 as the "Year of the Bible."
    Whereas the Bible, the Word of God, has made a unique contribution in shaping the United States as a distinctive and blessed nation and people;
    Whereas deeply held religious convictions springing from the Holy Scriptures led to the early settlement of our Nation;
    Whereas Biblical teachings inspired concepts of civil government that are contained in our Declaration of Independence and the Constitution of the United States;
    Whereas many of our great national leaders— among them Presidents Washington, Jackson, Lincoln, and Wilson—paid tribute to the surpassing influence of the Bible in our country's development, as in the words of President Jackson that the Bible is "the rock on which our Republic rests";
    Whereas the history of our Nation clearly illustrates the value of voluntarily applying the teachings of the Scriptures in the lives of individuals, families, and societies;
    Whereas this Nation now faces great challenges that will test this Nation as it has never been tested before; and

    Whereas that renewing our knowledge of and faith in God through Holy Scripture can strengthen us as a nation and a people; Now, therefore, be it
    *Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the President is authorized and requested to designate 1983 as a national "Year of the Bible" in recognition of both the formative influence the Bible has been for our Nation, and our national need to study and apply the teachings of the Holy Scriptures.
    Approved October 4, 1982.

2. The Proclamation states:

    BY THE PRESIDENT OF THE UNITED
    STATES OF AMERICA
    A PROCLAMATION
    Of the many influences that have shaped the United States of America into a distinctive Nation and people, none may be said to be more fundamental and enduring than the Bible.
    Deep religious beliefs stemming from the Old and New Testaments of the Bible inspired many of the early settlers of our country, providing them with the strength, character, convictions, and faith necessary to withstand great hardship and danger in this new and

Reagan proclaiming 1983 as the Year of the Bible violate the Establishment Clause of the First Amendment to the United States Constitution. They ask that this Court declare the actions of the Congress and the President to be violative of the First Amendment.

Defendant Reagan (hereafter Reagan) has moved for Judgment on the Pleadings. Plaintiffs, with lead plaintiff Rev. Philip Zwerling (hereafter collectively referred to as Zwerling), have moved for Judgment on the Pleadings or alternatively for Summary Judgment. These motions have been heard and submitted for decision.

Reagan claims in his motion that the plaintiffs lack standing to attack P.L. 97–280 or his Proclamation. Plaintiffs in their First Amended Complaint assert that they are harmed because (1) the non-Christians and atheists do not accept the Bible as the Word of God; (2) non-Christians are singled out for disadvantageous treatment because of their minority religious status; (3) non-Christian clergymen are disadvantaged by having the prestige and power of the United States endorse the Christian Bible and undermine their ability to provide religious, spiritual and atheist leadership; and (4) Christians have their religious book used for political rather than religious purposes impeding their efforts to promote and engage in beneficial ecumenical dialogue with non-Christians.

Each alleged damage to each of the plaintiffs requires different analysis for the purpose of determining standing. Some of them may even require evidence to be taken. Much of the rhetoric of counsel for plaintiffs completely ignores the admonition of Justice Rehnquist writing for the court in *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

The requirement of "actual injury redressable by the Court" (omitting cite), serves several of the "implicit policies embodied in Article III" (omitting cite). It tends to assure that the legal ques-

---

rugged land. These shared beliefs helped forge a sense of common purpose among the widely dispersed colonies—a sense of community which laid the foundation for the spirit of nationhood that was to develop in later decades.

The Bible and its teachings helped form the basis for the Founding Fathers' abiding belief in the inalienable rights of the individual, rights which they found implicit in the Bible's teachings of the inherent worth and dignity of each individual. This same sense of man patterned the convictions of those who framed the English system of law inherited by our own Nation, as well as the ideals set forth in the Declaration of Independence and the Constitution.

For centuries the Bible's emphasis on compassion and love for our neighbor has inspired institutional and governmental expressions of benevolent outreach such as private charity, the establishment of schools and hospitals, and the abolition of slavery.

Many of our greatest national leaders—among them Presidents Washington, Jackson, Lincoln, and Wilson, have recognized the influence of the Bible on our country's development. The plainspoken Andrew Jackson referred to the Bible as no less than "the rock on which our Republic rests." Today our beloved America and, indeed, the world, is facing a decade of enormous challenge. As a people we may well be tested as we have seldom, if ever, been tested before. We will need resources of spirit even more than resources of technology, education, and armaments. There could be no more fitting moment than now to reflect with gratitude, humility, and urgency upon the wisdom revealed to us in the writing that Abraham Lincoln called "the best gift God has ever given to man ... But for it we could not know right from wrong."

The Congress of the United States, in recognition of the unique contribution of the Bible in shaping the history and character of this Nation, and so many of its citizens, has by Senate Joint Resolution 165 authorized and requested the President to designate the year 1983 as the "Year of the Bible."

NOW, THEREFORE, I, RONALD REAGAN, President of the United States of America, in recognition of the contributions and influence of the Bible on our Republic and our people, do hereby proclaim 1983 the Year of the Bible in the United States. I encourage all citizens, each in his or her own way, to reexamine and rediscover its priceless and timeless message.

IN WITNESS WHEREOF, I have hereunto set my hand this third day of February, in the year of our Lord nineteen hundred and eighty-three, and of the Independence of the United States of America the two hundred and seventh.

RONALD REAGAN

tions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action. At 472, 102 S.Ct. at 758.

The pleadings and the declarations of the various plaintiffs leave this court without enough to decisively answer the standing question under the clear statement of *Valley Forge, supra.* But these motions can be resolved on a more fundamental consideration to which I now turn.

The Establishment Clause of the United States Constitution is found in the First Amendment which simply states:

> "Congress shall make no law respecting an establishment of religion ..."

That simple phrase evoked from Thomas Jefferson the awesome description of its purpose as the erection of a "wall of separation between church and state." [3] But Jefferson's formidable "wall" must be viewed with his concern for what it was that the First Amendment reached. To the Baptists in 1802 he put it this way:

> "Believing with you that religion is a matter which lies solely between man and his God, that he owes account to none other for his faith or worship, that the *legislative power of government* reach actions only, and not opinions, I contemplate with sovereign reverence that act of the whole American people which declared that *their legislature should make no law* respecting an establishment of religion or prohibiting the free exercise thereof, thus building a wall of separation between church and state." (emphasis added)

Jefferson could not have been clearer in telling us that when he supported religious freedom so strongly his fears were legislative action having the compulsion of law in matters of religion.

The contours of what is or is not religious freedom is difficult to define in a country whose daily history records so diverse and overwhelming a degree of religious beliefs and tolerance. Jefferson's influence on that history is significant.

James Madison was even more dedicated to religious freedom. Madison and Jefferson were dealing with colonies and later states that had established religions.[4] Madison, in opposition to Patrick Henry's support of the Virginia General Assembly's consideration of a levy-assessment for the support of teachers of religion and to finance incorporation of churches, wrote his famous Memorial and Remonstrance against Religious Assessments.[5] Madison's Remonstrance provoked sufficient controversy to have the assessment bill tabled. In its place Virginia enacted Thomas Jefferson's Bill for Establishing Religious Freedom,[6] declaring that no one could be compelled "to frequent or support any religious worship, place or ministry whatsoever ..."

Having succeeded in Virginia, Madison moved to the national government. On June 8, 1789, Madison insisted that the House of Representatives consider a bill of rights to be added to the United States Constitution of 1787. Madison's first proposal on religion stated:

> "The civil rights of none shall be abridged on account of religious belief or worship, nor shall any national religion be established, nor shall the full and equal rights of conscience be in any manner, or any pretext infringed."[7]

---

**3.** Thomas Jefferson's letter to Committee of the Danbury Baptist Association, January 1, 1802, reprinted in Koch & W. Peden, *The Life and Selected Writings of Thomas Jefferson,* 332–33 (1944).

**4.** Some of the original colonies which created state-religions are: Virginia (Episcopal), Massachusetts (Congregationalist), Connecticut (Congregationalist), New York (Episcopal), North Carolina (Anglican), South Carolina (Protestant). For a detailed discussion of church-state relations in the original states and colonies, see generally A. Stokes, *Church and State in the United States,* (Vol. I) (Harper & Brothers) 1950.

**5.** Quoted in full in *Everson v. Board of Education of the Township of Erving,* 330 U.S. 1, 63–74, 67 S.Ct. 504, 535–40, 91 L.Ed. 711 (1946).

**6.** It is interesting to note that Jefferson's proposal begins "WHEREAS Almighty God both created the mind free; ..."

**7.** 1 *Annals of Congress* 451 (June 8, 1789)

This was the genesis of separation of church and state. The direct progenitor of our present First Amendment was proposed on motion of Congressman Fisher Ames, adopted without debate, to read:

"Congress shall make no law establishing religion, or to prevent the free exercise thereof, or to infringe the rights of conscience."[8]

When Ames' amendment reached the Senate it was changed to read:

"Congress shall make no law establishing articles of faith or a mode of worship, or prohibiting the free exercise of religion ..."[9]

A joint conference committee, chaired by Madison, finally proposed the language that was finally adopted in its present form.

The debates of the First Amendment in that first Congress are not fully recorded so it is difficult to know exactly what Congress intended the establishment and free exercise clauses of the First Amendment to prohibit. What history makes clear is that Madison and Jefferson were not concerned with the discussion or recognition of religion in general by all legislators or President. Nor were they concerned with recognition that any particular religion was important in the establishment, growth or development of the nation they helped form and nourish.[10] Their particular concern was that the sovereign (in this nation the legislature) not encroach on the ability of any one person or one religion to co-exist in as near a perfect state of harmony as human existence could allow. It was the fear of this "sovereign compulsion" by whatever means it can be accomplished and not religious discussion or expression that guided Madison's hand to write "Congress shall make no law ..." When courts suppress expression, whether by individual or government, they subvert the very fundamental meaning of religious freedom.

This case brings for the first time a consideration of the nature of legislative action leading to a proclamation by the President involving a religious subject. Neither P.L. 97–280[11] nor the President's Proclamation require or compel any kind of action concerning religion.

"Law" as it was understood in 1789 and today cannot be comprehended differently. Webster's Third New International Dictionary (unabridged) defines law as:

1a(1): a binding custom or practice of a community: a rule or mode of conduct or action that is prescribed or formally recognized as binding by a supreme controlling authority or is made obligatory by a sanction (as an edict, decree, rescript, order, ordinance, statute, resolution, rule, judicial decision or usage) made, recognized or enforced by the controlling authority.

Fundamental to the existence of a law is the obligation it creates and the sanction it imposes. It is a matter of compulsion and does not take the nature of a plea, suggestion or request. That is the single thrust of defining law in Blackstone's Commenta-

8. *Id.* (August 20, 1789)

9. 1 *Journal of the Senate* (September 9, 1789)

10. Jefferson praising religion in his First Inaugural Address (March 4, 1801), said:

"Let us then, with courage and confidence, pursue our own federal and republican principles; ... entertaining a due sense of our equal right to use our own faculties; ... enlightened by a benign religion, possessed in deed and practiced in various forms, yet all of them inculcating honesty, truth, temperance, gratitude, and the love of man, acknowledging and adoring an overruling Providence, which, by all its dispensations, proves that it delights in the happiness of man here, and his greater happiness hereafter; ..."

Madison's praise was even more direct in his First Inaugural Address (March 4, 1809).

"... In these my confidence will under every difficulty be best placed, next to that which we have all been encouraged to feel in the guardianship and guidance of that Almighty Being whose power regulates the destiny of nations, whose blessings have been so conspicuously dispensed to this rising Republic, and to whom we are bound to address our devout gratitude for the past, as well as our fervent supplication and best hopes for the future."

11. The P.L. 97–280 appellation of the Congressional joint resolution is simply an indexing system of Congressional action. It implies no force of law.

ries and the Supreme Court in *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909), and *United States Fidelity & G. Co. v. Guenther*, 281 U.S. 34, 50 S.Ct. 165, 74 L.Ed. 683 (1929).

*Everson v. Board of Education of the Township of Erving*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1946), the seminal case on the establishment clause, requires no different definition of law. In *Everson* the Supreme Court was considering a New Jersey statute providing aid for parochial schools. Mr. Justice Black, reviewing historical concerns over legislatively established state religions, says:

> The "establishment of religion" clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can *pass laws* which aid one religion, aid all religions, or prefer one religion over another. At p. 15, 67 S.Ct. at p. 511.

Plaintiffs argue, in effect, that every action of Congress is a law, without considering what effect it has to meet the common understanding of law as defined in the dictionary or in everyday usage. In taking this position they assume a false major premise, i.e., all actions of Congress are laws. No one can fail to recognize that some joint resolutions may have the force of law as it is commonly understood. It defies reality to argue that a joint resolution simply recognizing some heroic deed, or honoring some specific person for contributions to science or world leadership, is law.[12] Likewise to say, as plaintiffs do, that because the President can and does exercise powers vested in that office by the Constitution, or delegated to him by Congress by proclamations and executive orders *"given effect"* by the courts, that all proclamations necessarily are laws, is equally in defiance of logical thinking.

Plaintiffs, in support of their misapprehension of what is and is not law, claim *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), broadened the definition of the First Amendment to cover all "governmental" conduct. Nothing could be farther from the truth. Justice Brennan, speaking for the Court, says at page 264, 84 S.Ct. at page 717:

> ... We hold that the *rule of law* applied by the Alabama courts is constitutionally deficient for failure to provide the safeguards for freedom of speech and of the press that are required by the First and Fourteenth Amendments in a libel action brought by a public official against critics of his official conduct. (emphasis added)

Involved in *New York Times Co. v. Sullivan, supra,* was the *law* of libel of Alabama which provided, simply, if you libel someone you pay damages. That is law within its classic definition.[13]

*New York Times v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), helps plaintiffs' argument little more. In *New York v. United States, supra,* the government sought to invoke the injunctive powers of the court to enforce a statute making espionage illegal.[14]

None of the cases cited by plaintiffs support the claim that no law need be involved to involve the First Amendment. Each involved "law" in its traditional and classic definition. *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (statute requiring reading of Bible verse and recitation of Lord's Prayer); *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (state law directing use of prayer in public schools); *Karen B. v. Treen,* 653 F.2d 897 (5th Cir. 1981) *aff'd* 455 U.S. 913, 102 S.Ct. 1267, 71 L.Ed.2d 455 (1982) (statute to provide

---

**12.** *See, among others,* P.L. 89–385, which designates April 9, 1966 as "Sir Winston Churchill Day." Other examples of joint resolutions which have no force of law, *See, e.g.,* P.L. 95–309 (National Brotherhood Day), P.L. 89–442 (National Flag Week), P.L. 95–100 (National Family Week).

**13.** Plaintiffs would read into the First Amendment what is not there and was not intended. To read it as plaintiffs would have this Court apply the First Amendment would change the meaning from "make no law" to "take no action."

**14.** 18 U.S.C. § 793. See 328 F.Supp. 324.

**1378**

guidelines for school prayer); *Everson v. Board of Education, supra,* (statute authorizing reimbursement to parents for parochial school transportation); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (state statute providing aid to church related schools); *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (Kentucky statute requiring posting of Ten Commandments in public school).

The joint resolution of Congress, P.L. 97–280, does not exact any particular behavior from any individual. Nor does it authorize the President to exact any particular behavior from any individual. It certainly imposes no penalties or sanctions of any kind. It is not a "law." *American Banana Co. v. United Fruit Co., supra; United States Fidelity & G. Co. v. Guenther, supra.*

Reagan's Proclamation likewise has no force of law. Plaintiffs' hyperbolized argument which states that Presidential proclamations are law and therefore not within the strictures of the First Amendment's proscription that "Congress shall make no law," would permit the President, in the words of plaintiffs, "by executive order to require that federal employees attend specific religious services, and no other, as a condition of their further employment" (emphasis added) is simplistically erroneous. This conclusion totally mischaracterizes the distinction between speaking on a subject that involves a religious text, and legislating on religious matters. Stating the distinction makes clear the reach of Presidential power in "establishment of religion."

Reagan simply states in his proclamation matters of unimpeachable historical fact concerning the place the Bible and Judeo-Christian philosophy has in our national heritage. What the President is doing is more obviously an attempt to rekindle in today's society the patriotic zeal of Madison, Jefferson, Washington, Jackson, Lincoln and Wilson.[15] The historical prece-

dents which surround the issuance of Presidential proclamations beginning with Washington's Thanksgiving proclamation in 1789, followed by four such proclamations by James Madison in 1812, 1813, 1814 and 1815, and continuing without surcease to President Reagan's proclamation of February 3, 1983, makes the words of the Chief Justice in *Marsh v. Chambers,* —— U.S. ——, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983) authorizing state legislative prayer, particularly apt when he says:

> "This unique history leads us to accept the interpretation of the First Amendment draftsmen who say no real threat to the Establishment Clause arising from a practice of prayer similar to that now challenged, we conclude that legislative prayer presents no more potential for establishment than the provision of school transportation, *Everson v. Board of Education,* 330 U.S. 1, 91 L.Ed. 711, 67 S.Ct. 504, 168 A.L.R. 1392 (1946), beneficial grants for higher education, *Tilton v. Richardson,* 403 U.S. 672, 29 L.Ed.2d 790, 91 S.Ct. 2091 (1971) or tax exemptions for religious organizations, *Walz [v. Tax Comm'n,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) ], supra.*"

Presidential proclamations, without more, do not present the type of governmental action that encroaches upon First Amendment establishment prohibitions. In another context, were a proclamation to be sufficiently forceful as to mandate religious conduct, the courts would be sufficiently sensitive to say, "Not while this Court sits." *c.f. Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1885).

This Court finds no Establishment threat in P.L. 97–280 or Reagan's Presidential Proclamation of 1983 as the Year of the Bible.

The motion of plaintiffs for judgment on pleadings or summary judgment is denied.

Defendant's motion for judgment on the pleadings is granted.

15. Each acknowledged the Bible as a foundational document in the establishment of this Nation.